JS 44  (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Autumn Renee

### DEFENDANTS

Felipe S. Peralez, III, Geovani Hernandez, Ramon Gonzalez, Julia Cruz, Nancy Venecia, Felecian Ramos, Mike Alaniz, Elizabeth Garza, Abelardo Gutierrez, Roel Bermea, City of LaJoya, City of Penitas

**(b)** County of Residence of First Listed Plaintiff   Hidalgo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hidalgo
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tammy E. Henderson Peden
7100 Regency Square Blvd, Ste 160
Houston, Texas 77036

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § ;1983; §1985; §1986

Brief description of cause:
Plaintiff was sexually assaulted by communications officer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____   DOCKET NUMBER _____

DATE  5-26-2016

SIGNATURE OF ATTORNEY OF RECORD   *Tammy E. Henderson Peden*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

| | | |
|---|---|---|
| **AUTUMN RENEE,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| **FELIPE SANTIAGO PERALEZ, III** | § | |
| **GEOVANI HERNANDEZ** | § | |
| **RAMON GONZALEZ** | § | **CIVIL ACTION NO. _____** |
| **JULIA CRUZ** | § | |
| **NANCY VENECIA** | § | |
| **FELECIANO RAMOS** | § | **(JURY TRIAL REQUESTED)** |
| **MIKE ALANIZ** | § | |
| **ELIZABETH GARZA,** | § | |
| **ABELARDO GUTIERREZ** | § | |
| **ROEL BERMEA,** | § | |
| **CITY OF LA JOYA** | § | |
| **CITY OF PENITAS** | § | |
| **Defendants.** | § | |

**I.**
**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW AUTUMN RENEE, Plaintiff, complaining of FELIPE SANTIAGO

PERALEZ, III, GEOVANI HERNANDEZ, RAMON GONZALEZ, JULIA CRUZ, NANCY

VENECIA, MIKE ALANIZ, FELECIANO RAMOS, ELIZABETH GARZA, ABELARDO

GUTIERREZ, ROEL BERMEA, CITY OF LA JOYA and CITY OF PENITAS in the nature of

42 U.S.C., §1983; 42 U.S.C. §1985; and 42 U.S.C. §1986 and in the nature of Rule 15 of the

Federal Rules of Civil Procedure, Plaintiff would respectfully show as follows:

## II.
## PARTIES

1.      Plaintiff, Autumn Renee, is a resident of Hidalgo, County, Texas.

2.      Defendant Felipe Santiago Peralez, III is a former Communications Officer with La Joya Police department and may be served with process at his residence located at 1001 Tabasco Road, La Joya, Texas 78560.

3.      Defendant Geovani Hernandez former Chief of Police at La Joya Police Department for the City of La Joya, Texas and may be served with process at 5140 N. Mile 4 W Weslaco, Texas 78599.

4.      Defendant Ramon Gonzalez is the current Chief of Police with La Joya Police Department for the City of La Joya, Texas and may be served with process at 100 W. Expressway 83, La Joya, Texas 78560.

5.      Defendant City of La Joya which may be served which may be served with process by serving the La Joya's City Administrator, Mike Alaniz at 101 N. Leo Avenue, La Joya, Texas 78560.

6.      Defendant Mike Alaniz, City Administrator for The City of La Joya may be served with process by serving at 101 N. Leo Avenue, La Joya, Texas 78560.

7.      Defendant Feleciano Ramos is a Sergeant with La Joya Police Department for the City of La Joya, Texas and may be served with process at 100 W. Expressway 83, La Joya, Texas 78560.

8.      Defendant Julia Cruz is a Police Officer employed by the La Joya Police Department and may be served with process at 100 W. Expressway 83, La Joya, Texas 78560.

9.      Defendant Nancy Venecia is a Police Officer employed by the La Joya Police Department and may be served with process at 100 W. Expressway 83, La Joya, Texas 78560.

[2]

10.     Defendant Roel Bermea is the Chief of Police with Penitas Police Department for the City of Penitas, Texas and may be served with process at 1803 S. Main Street Penitas, Texas 78576.

11     Defendant Elizabeth Garza is a Police Officer, with Penitas Police Department for the City of Penitas, Texas and may be served with process at 1803 S. Main Penitas, Texas 78576.

12.     Defendant Abelardo Gutierrez is a Police Officer, with Penitas Police Department for the City of Penitas, Texas and may be served with process at 1803 S. Main Penitas, Texas 78576.

13.     Defendant City of Penitas may be served with process by serving the Omar Romero, Penitas City Manager's Office at 1111 S. Main Street Penitas, Texas 78576.

### III.
### JURISDICTION & VENUE

14.     The Complaint presents federal questions pursuant to the United States Constitution, including provisions of the First, Fourth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution which are asserted pursuant to 42 U.S.C. §1983, 42 U.S.C., §1985; and 42 U.S.C. §1986 to redress plaintiff's claims of deprivation of rights, privileges, and immunities by state actors while acting in their official capacities, while acting under color of state law and employment, when such rights, privileges, and immunities are secured under the United States and Texas Constitutions, and federal laws; namely, the Federal Prison Rape Elimination Act, the American with Disabilities Act/Rehabilitation Act, and statutory laws under the Texas Penal Codes; Texas Code of Criminal Procedures; Texas Occupation Codes; the Texas Health & Safety Codes, and the procedures as set forth in the evidence gathering process of a rape/sexual assault cases and the physical and mental evaluation

of the rape/sexual assault of victims; as well as the well-established laws and decisions of the United States Supreme Court, federal courts of appeals, and district courts.

15.     Sections 1983, 1985, and 1986 individually, singularly, and collectively afford a basis for any citizen to present a cognizable claim for relief not only against state actors if, as a result of state action, the citizen has been deprived of any rights, privileges, or immunities secured by the United States Constitution and/or by federal law; but, when two or more persons in any state or territory conspire or go in disguise on the highways or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the law; or for the purpose of preventing or hindering the constituted authorities of any state or territory from giving or securing to all persons within the state or territory the equal protection of the laws, or when any person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this Title, are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act is committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

16.     Plaintiff maintains that the defendants named hereinabove, jointly and severally have deprived her of liberty interests, Due Process, Equal Protection rights, privileges and immunities secured under the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution; federal and state laws; the decisions and interpretations of the laws in accordance with the United States Supreme Court, federal courts of appeals and district courts well established law prior to the complained of event, namely; the Federal Prison Rape Elimination Act, 28 C.F.R., Part 115, which provides a "Zero Tolerance of Sexual Abuse and

Sexual Harassment,: (see Public Law 108-79 September 4, 2003, 10Eighth Congress; 42 U.S.C., §15601 Prison Rape Elimination Act of 2003); Americans with Disabilities Act/Rehabilitation, §§42 U.S.C. 12101 and 29 U.S.C., 701; Texas Penal Codes, §§§39.02, 39.03, and 39.04; Texas Code of Criminal Procedures; Texas Occupation Codes, Sheriffs; Texas Health & Safety Codes.

17.     While the declaratory relief provided by §1983 enables plaintiff to establish the violation of a liberty interest, due process or equal protection right, and §1985, that defendants acted in concert to deprive plaintiff of said rights, or §1986 that certain defendants having an opportunity to take corrective or preventive measures but failed to do so.  Subject to and dependent upon a ruling in plaintiff's favor upon his due process or equal protection claims for defendants' failure to abide by statutes, laws, constitutional rights, privileges and immunities secured the plaintiff enacted into law by the U. S. Congress and the Texas legislature, and/or deprived plaintiff of any other rights, privileges or immunities, the principles of pendant jurisdiction are engaged for combining remedies through §§§1983, 1985, and 1986, with relief through the plaintiff's "Intentional Infliction of Emotional Distress Claim."

18.     The principles of pendant jurisdiction are further engaged to accommodate to plaintiff's claim for Bad Faith.  No federal question can be raised by a claim for bad faith. However, once a predicate injury in the form of a constitutional violation has been validated, this court's pendant jurisdiction permits consideration of a claim for bad faith and its concomitant remedy for monetary damages.  Plaintiff's request for monetary damages springs exclusively from its Bad Faith Claim.

19.     In accordance with the Federal Prison Rape Elimination Act, the Texas Penal Codes, Texas Code of Criminal Procedures, the Texas Occupation Codes, and the Texas Health & Safety Codes, plaintiff challenges the procedures, policies, and rules in which the La Joya and

Penitas City Police Departments conduct their cases involving sexual assault and rape victims and the evidence gathering for such cases in which currently involved the plaintiff.

20.     The damages claimed are within the jurisdictional requirements of this Court.

21.     All conditions precedent to bring this actions have occurred and/or been performed.

22.     Venue is proper in the McAllen Division of the Southern District of Texas since Plaintiff's claims, including asserted federal claims, accrued in Hidalgo County, Texas and/or one or more of the Defendants resides in Hidalgo County, Texas and/or is principally located in Hidalgo County, Texas.

## IV.
## FACTS

23.     Plaintiff was arrested by the Penitas Police Department on May 29, 2014 pursuant to a warrant issued for a misdemeanor probation violation and a failure to identify charge then transported to and booked into La Joya City Jail in La Joya, Texas pending her arraignment by Penitas Police Department.

24.     While in custody and detained at the La Joya City Jail, Communications Officer Felipe Santiago Peralez, III came to plaintiff's cell and demanded that she move to the end of her cell, stating he would "make things right for her if she wanted to use the phone." Peralez began an all-night invasion of plaintiff's body, by inserting his fingers, hands, and other objects into the buttocks and vaginal areas of plaintiff's body; switching back and forth from the anus to the vaginal area; thus, forcing her to lean back further while he examined her, probing and exposing her privates as an expedition show; forced her to perform oral sex on him; forced her to masturbate him thereby humiliating plaintiff and causing embarrassment, anxiety, and causing

her to cry out in pain and fear of what was happening and what may be forthcoming, and in staunch fear of further brutal, sadistic, and invasive acts causing severe bruises, scratches, irritation, and soreness to plaintiff's vagina and anus areas repeatedly for hours, specifically 49 contacts were observed on video footage between defendant Peralez and plaintiff Autumn Renee.

25.     Furthermore, defendant Peralez' actions caused plaintiff to suffer mental anguish, stress, anxiety, humiliation, fear, headaches, lack of sleep, weight loss, and mortification; due to his malicious and sadistic Excessive Use of Force, through the *deliberate indifference* to plaintiff's health, life, security, safety, and [both] physical and mental well-being through the repugnant conduct, which served no penological goal, and is extremely shocking to the conscience of mankind and without the consent of plaintiff.

26.     On May 30, 2014 Lieutenant Ramon Gonzalez reviewed the video recording, questioned plaintiff Autumn Renee about the incident from the night before, obtained her statement, offered her a taco, declined her request for medical attention and released her to Penitas Police Officer Elizabeth Garza without offering her medical attention or counseling.

27.     Plaintiff was escorted from her cell and taken to Lt. Ramon Gonzalez who declined plaintiff Autumn Renee's request for medical attention, despite the fact that defendant Gonzalez had full knowledge of the fact that defendant Peralez had sexually assaulted plaintiff Autumn Renee on May 29, 2014 as he viewed the video in plaintiff's presence, confirmed the sexual encounter with plaintiff, obtained her written statement and discussed the incident with other La Joya Police Officers, namely Jose Bustillos, Chief of Police Geovani Hernandez and Investigator Ortiz as verified from statements referenced in the Texas Rangers Company "D" Division File RD 2015-00053  (**See Plaintiff Exhibit 1**)

28.    The record reflects that La Joya Police Department took no effort to offer plaintiff Autumn Renee medical attention on the day of the incident or any time thereafter.  Defendants acted in concert in failing to investigate the incident, gather, collect or preserve evidence nor did defendant report the incident to an independent law enforcement agency.

29.    On May 30, 2014, Lieutenant Ramon Gonzalez, Sergeant Ramos and Chief Geovani Hernandez viewed the video together up to the point where sexual contact is made; Chief Hernandez ordered defendant Ramon Gonzalez and defendant Sergeant Ramos to continue to view the camera system and defendant Chief Hernandez left defendant Ramon Gonzalez' office to go brief the City Administrator Mike Alaniz.

30.    Chief Geovani Hernandez, Lieutenant Ramon Gonzalez, Sergeant Ramos and Mike Alaniz all of which who learned of the incident on May 30, 2014 but after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, each of the following city employees, namely and Chief Geovani Hernandez, Lieutenant Ramon Gonzalez, Sergeant Ramos and Mike Alaniz neglected to arrange for transport from La Joya City Jail or contact Penitas Police Department and request that plaintiff be transported to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual].

31.     On December 4, 2014 while conducting a criminal investigation, Texas Ranger Robert "Bobby" Garcia learned of an alleged sexual assault that occurred inside the La Joya City Jail on May 29, 2014.

32.     On December 11, 2014, Ranger Garcia met with Lieutenant Gonzalez and collected the offense report generated by Lieutenant Gonzalez on May 30, 2014, which included shorts statements from three La Joya Police Officers, an affidavit from plaintiff and copy of surveillance recorded footage of the incident which substantiate that the named defendants from La Joya Police Department were aware of the assault on plaintiff.

33.     On February 3, 2015 Ranger Garcia collected a voluntary statement from Penitas Police Officer Elizabeth Garza who acknowledged that plaintiff Autumn Renee advised her that she had been sexually assaulted on May 29, 2014 during the May 30, 2014 transport from La Joya to Penitas, Texas and that she, defendant Garza had advised Officer Abelardo Gutierrez and Chief Roel Bermea of the incident but neither she nor her colleagues from Penitas Police Department offered plaintiff Autumn Renee medical attention or counseling.

34.     Plaintiff stated that Officer Garza advised her that she should forget all about the incident and go on with her life, because "people come up missing all the time in the valley."

35.     Furthermore, after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, Officer Garza neglected to transport plaintiff to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352

of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

36.     On March 4, 2015, Ranger Robert "Bobby" Garcia obtained a statement from La Joya Police Officer Nancy Venecia who indicated that she learned of the incident on May 30, 2014 but after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, Officer Venecia neglected to contact Penitas Police Department and request that plaintiff be transported to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

37.     On March 10, 2015, Ranger Robert "Bobby" Garcia obtained a statement from La Joya Police Officer Julia Cruz who stated that on May 30, 2014 Ramon Gonzalez directed her (Cruz) to take plaintiff to the restroom and see if plaintiff had anything to say about the incident the night before.

38.     Defendant Cruz indicated that despite the fact that she spoke with plaintiff who talked to Cruz, believed they were friends, asked Cruz to promise not to say anything, stated that plaintiff had been abused before and that girls are supposed to stick together and furthermore, after learning of the incident in which plaintiff suffered throughout the long night in custody of

[10]

the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, Officer Cruz neglected to transport plaintiff to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

39.     On May 30, 2014 Penitas Police Officer, Elizabeth Garza notified Chief Roel Bermea of what plaintiff stated defendant Peralez had done to her while in La Joya City Jail and defendant Bermea advised Garza to write a report and further stated that the La Joya Chief of Police and Captain had already contacted him.

40.     Furthermore, after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, Chief Bermea neglected to transport plaintiff to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

[11]

41.     On May 30, 2014 Penitas Police Officer, Elizabeth Garza notified Sergeant Abelardo Gutierrez of what plaintiff stated defendant Peralez had done to her while in La Joya City Jail and defendant Gutierrez advised plaintiff that he had only arrested her for failure to identify herself to police and failed to offer plaintiff medical attention or inquire as to her health or welfare.

42.     Furthermore, after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted, and knowing the procedures as set forth by the Texas Legislature, Officer Abelardo Gutierrez neglected to transport plaintiff to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

43.     During the interrogation on May 30, 2014 with defendant Lieutenant Gonzalez, La Joya Chief of Police, Geovani Hernandez walked into the room approached plaintiff in an unfriendly manner, asked plaintiff what happened here in Spanish and also spoke with Chief Roel Bermea of Penitas Police Department about the incident that occurred the night before while she was detained at La Joya City Jail but never offered medical attention or conducted a wellness check.

44.     Furthermore, after learning of the incident in which plaintiff suffered throughout the long night in custody of the La Joya City Jail, and learning that she was sexually assaulted,

[12]

and knowing the procedures as set forth by the Texas Legislature, La Joya Chief of Police Geovani Hernandez neglected to transport plaintiff to an emergency room for physical examination for the purpose of gathering evidence, as is the proper and lawful procedure conducted during investigation of any sexual assault or rape allegation in the State of Texas. [See Chapter 56 of the Texas Code of Criminal Procedure; and Chapter 57 of the Texas Family Codes, Crime Victims' Rights; Section 1701.352 of the Texas Occupations Code, Law Enforcement Officers; Texas Penal Code, Sections 22.011 "Sexual Assault," 22.021 "Aggravated Assault", and 22.04 "Injury to a Child, Elderly Individual, or Disabled Individual"].

45.     Plaintiff has suffered physically and emotionally, and at no time, neither immediately after the sexual assault, the following day -- after the Chief of Police viewed the video tape and interviewed plaintiff regarding the sexual assault, when plaintiff advised the Penitas transporting officer, nor when plaintiff was committed to prison was plaintiff ever properly examined for physical or mental injuries caused by the sexual assault; as required in the Texas Penal Code, and the United States Congress Prison Rape Elimination Act, as well as the Texas Occupation Code, under the duties and obligations of Sheriffs to a sexual assault or rape victim.

46.     Due to threats of bringing harm to plaintiff's family members coupled with the threat of imminent fear, plaintiff confided in small circle of people until she felt safe and far away from La Joya and Penitas law enforcement officials.

47.     The Prison Rape Elimination Act (PREA) was enacted into law by the United States Congress because of the tremendous amount of persons being raped while serving out their prison sentences.  The Act provides "Zero Tolerance" for rape and sexual assault in prisons, jails, and other institutional environments.

[13]

48.     The Texas Penal Codes provides criminal offenses of persons in the State of Texas who violate these laws and commit sex acts described therein; the Texas Code of Criminal Procedures, Texas Occupation Codes and the Texas Health & Safety Codes provide state actors acting under color of their official capacities with procedures in which they are to follow to provide the victim of such crimes with protections, safeguards, and physical and mental evaluations to determine any further injuries and harm because of the committed act of rape or sexual assault and rape incidents in state or federal prisons, jails, or other institutions.

49.     Also, pursuant to Title 42 of the United States Codes Annotated, §§§1983, 1985 and 1986, whether individually, singularly, collectively, and/or combined, affords plaintiff her basis to present her claims for relief and monetary damages against the state actors, as a result of their "deliberate indifference" to plaintiff's life, health, safety, security, and the rights, privileges and immunities secured her by the United States and Texas Constitutions, as well as the laws of the land.

50.     The extreme and illegal assaults and body cavity searches deeply traumatized plaintiff to the extent that she is now under the care and mental evaluations of a psychologist because of the outright disregard for plaintiff's rights under the Constitutional principles that should have protected plaintiff's vested rights to privacy and her dignity.  The fact that local city governments of La Joya, Texas and Penitas Texas treated a female prisoner (with a mental disability) with such blatant brutality and inhumanity should outrage contemporary society.

51.     The trauma and humiliation endured by plaintiff, and the courage to seek legal recourse is a cognizable claim and should be recognized; in order to ensure that the local governments of both La Joya, Texas and Penitas, Texas, along with named defendants never

[14]

subject another prisoner with such a nightmare, and in violation of constitutionally secured rights.

## V.
## PLAINTIFF'S EIGHTH AMENDMENT AND DELIBERATE INDIFFERENCE CLAIMS

52.    The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted [U. S. Const. Amend. 8]. The United States Supreme Court has held that the use of excessive force against a prisoner is a violation of the Eighth Amendment, expounding further that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment… forbidden by the Eighth Amendment. [Whitley vs. Albers, 475 U.S. 312, 319 (1986) (Quoting Ingraham vs. Wright, 430 U.S. 651, 670 (1977); Hudson vs. McMillan, 503 U.S. 1, 5-6 (1992)].

53.    Plaintiff claims herein that defendants violated her right to be free from cruel and unusual punishment, and due process rights, by failing to follow proper procedures of the law in her sexual assault and rape, and excessive use of force.

54.    Excessive use of force claims involves two prongs: (1) An objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) a subjective prong under which the plaintiff mush show that "the officials acted with a sufficiently culpable state of mind." Hudson, supra, 503 U.S. at 8.

55.    The objective component of an excessive force claim is "contextual and responsive to contemporary standards of decency." Id. at 8.

56.    The subjective element of an excessive force claim "turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley 475 U.S. at 320-21.

[15]

57.     Sexual abuse is repugnant to contemporary standards of decency and plaintiff's allegations of sexual assault satisfies the objective component of her Eighth Amend. Excessive use of force claim, because it has been held that the sexual assault/abuse of a prisoner by a corrections officer has no legitimate penological purpose, other than the invasion of plaintiff's bodily integrity and the sick gratification of Officer Peralez.

58.     Officer Peralez' behavior was egregious, extreme, outrageous, and was designed to inflict emotional distress and cause physical harm and injury, which was left untreated, examined or evaluated by any physician and/or psychologist until at a later date.

59.     Plaintiff suffered physical and mental injuries, as categorized by the Texas Penal Codes and Eighth Amendment to the United States Constitution; inasmuch as the sexual assault of her body is repugnant to the conscience of mankind.  Furthermore, the Texas Penal Code, §71.02 provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination, he commits or conspires to commit one of several enumerated offenses including "sexual assault."   Combination is defined as "three or more persons who collaborate in carrying on criminal activities." [Tex. Penal Code, §71.01 (a)].  In the instant matter, evidence shows that intent existed from the facts that prove the combination element; e.g. admonishing plaintiff to treat the matter as if it never happened, and the threat that people come up missing all the time in the valley, targeting both plaintiff as well as her elderly parents and young children.  Such statements, admonitions, and threats were made by defendants while acting in their official capacity and under color of state law and/or employment.  These acts, conduct, and threats were attempts to hinder the legal process and investigation, preventing physical and mental evidence to surface for the case of sexual assault against plaintiff, and the immediate transfer of plaintiff back to Texas Department of Criminal Justice for the parole

[16]

violation in which she was arrested for and transported to the La Joya City Jail, by the City of Penitas Police Department.

60.     Multiple criminal statutes were violated by multiple officials of the La Joya and Penitas Police Departments, which establishes the requisite combination theory.  Additionally, the facts, conduct and the acts of these multiple police officials conform to the theory of an "organized criminal activity" and substantiates the facts of the victim being denied her rights to the protections of health and safety, and most especially, while being incarcerated within the municipalities city police departments and under the care and supervision of public officials, and as the sole witness to the incident had informed to his/her superior officer the next morning of the sexual assault of plaintiff, and the minimizing of the events taken place for the purpose of concealing, hiding true facts of the matter, and the hindering of a legal process and investigation by making threats upon the victim and her family.

61.     Pursuant to Texas Penal Code, §39.03 (a) (3), a public official commits a crime of official oppression if, while acting under color of his office or employment, he intentionally subjects another to sexual harassment; and, sexual harassment means in accordance to §39.03 (c) as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise of enjoyment of any right, privilege, or immunity, either explicitly or implicitly and in the instant case matter, plaintiff never provided and/or did she desire to have any sexual relations with Officer Peralez.

62.     Furthermore, pursuant to the Supreme Court decision of Monell vs. N. Y. Dept. of Social Services, a municipality may only be held liable when an action taken pursuant to official

municipal policy or custom caused the constitutional violation. Monell, 98 S. Ct. 2018; Collins vs. City of Harker Heights, Tex. 112 S. Ct. 1961.

63.    Plaintiff avers that the city jails of La Joya and Penitas (1) maintains policies that the jails are liable for the protection of each inmate housed in its jail, and that they must conduct investigations and provide safety and health practices; (2) each named defendant knew or should have known of the existence of such policies and customs; (3) that because of their failure to provide the safety and health protections of a mentally disabled person, which resulted in her being sexually assaulted by an improperly trained and mentally incompetent employee; thus, violating plaintiff's First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendment rights, privileges, and immunities; and (4) the failure of the defendants in following their policies and customs of reporting, investigating, gathering of evidence; providing the necessary physical and mental evaluations to determine the amount of injuries suffered the plaintiff throughout the traumatizing and victimizing a known mentally ill person for self-gratification and pleasure because the defendants failed to make the appropriate investigations and physical/mental evaluations when hiring officer Peralez, and most especially when he had  deficient work habits and possessed criminal records which resulted in plaintiff being molested, sexually abused, sexually assaulted, threatened her life, as well as the lives of her children and elderly parents if she sought recourse in the matter.

64.    Pursuant to section 1701.253 of the Texas Occupation Codes, (Please see also §1701.352), the policy makers are responsible for the establishing of an educational curriculum for preparatory and advanced course and programs that include the police officers training in fields of duties for:

        A. The investigation and documentation of cases that involve:

[18]

       1)  Child abuse or neglect.

       2)  Family violence; and

       3)  Sexual Assault.

    B.  Training in documentation of cases required by Subsection (b) in:

       1)  Making a written account of the extent of injuries sustained by the victim of an alleged offense;

       2)  Recording by photographing or videotape the area in which an alleged offense occurred and the victim's injuries; and;

       3)  Recognizing and recording a victim's statement that may be admissible as evidence in a proceeding concerning the matter about which the statement was made.

65.     See also [Pistrowski vs. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)]. 5th Circuit Court of Appeals defined "official policy or custom" as: (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or, (2) A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. [Johnson vs. Moore, 958 F.2d 92, (5th Cir. 1992) (quoting Bennett vs. City of Slidell, 735 F. 2d 861, 862) (5th Cir. 1984)]. Here neither La Joya Police Department employees, La Joya City Administrator or Penitas Police Department employees acted in good faith and responsibility for the acts and conduct of a fellow officer, but acted with deliberate indifference to plaintiff's health, safety, physical and mental injuries suffered and endured from the hands of a fellow officer, who was inadequately hired, trained, and who had a criminal history and poor employment record; in their

attempts to cover-up and conceal facts, evidence and hinder a legal process/criminal investigation for the purpose of escaping criminal and civil liability.

66.    The Fourteenth Amendment imposes at a minimum, the same duty the Eighth Amendment imposes; more precisely, that persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs. [Wagner vs. Bay City, Texas, 227 F.3d 316 (5th Cir. 2000)]. Because of defendant Peralez' criminal acts, conduct, and the carrying out of an indecent and immoral sexual assault upon plaintiff without her consent; because the defendants, the cities of La Joya and Penitas failure to hire, train, and educate their police officers and staff in cases involving rape, sexual assault, and assault and battery, plaintiff suffered physical and mental tortures, which resulted in her personal body parts to become violated, sore and tender from the continual probing of the officer's hands, fingers and other objects; and mental inflictions of mental pains, anguish, stress, sleep deprivation, sleepless nights, nightmares caused by the event, worries for herself and her children and elderly parents who were threatened if plaintiff sought recourse by means of outside investigative agencies, e.g. the Federal Bureau of Investigation or Courts, and the lingering torments of when will she experience death or other serious bodily injury, because she told her story to someone and the filing of the instant Civil Rights action against defendants.

## VI.
## PLAINTIFF'S DUE PROCESS & EQUAL PROTECTION OF THE LAW CLAIM

67.    The Prison Rape Elimination Act (PREA) passed by the U. S. Congress in 2003, applies to all detention facilities, including federal and state prisons, jails, police-lockups, private facilities, and immigration detention centers; and specifically recognizes that sexual assault in detention can constitute a violation of the Eighth Amendment. [42 U.S.C., §15601 (13); U. S. Const., Amend. 8]. PREA requires that facilities adopt a "Zero Tolerance" approach to this form

of abuse.  Even before PREA was passed, courts agreed that rape or sexual assault of prisoners by correctional officers violate the Eighth Amendment, as well as the Fourteenth Amendment. [Farmer vs. Brennan, 511 U.S. 825 (1994)].

68.    The Eighth Amendment forbids cruel and unusual punishment, and it has been interpreted to prohibit excessive use of force and guard brutality, as well as unsanitary, dangerous or overly restrictive conditions.  In Hudson vs. McMillan, 503 U.S. 1 (1992), the court held that a guard's use of force violates the Eighth Amendment when it is not applied in good faith effort to maintain or restore discipline; but instead, to maliciously and sadistically cause harm.

69.    Excessive force is described as meaning: "Any physical contact by a guard that is meant to cause harm, rather than keep order." [Siglar vs. Hightower, 112 F.3d 191 (5th Cir.)]. Also known as the Ku Klux Klan Act, Section 1983 was originally enacted to enforce the Fourteenth Amendment against secret, conspiratorial, and terrorist organizations, like the Ku Klux Klan, which were effectively thwarting black voter registration, jury service, and office holding after the Civil War.

70.    Two provisions of the 1871 act, with derivations in current federal law found at Sections 1983 and 12984 of Title 42 of the United States Codes Annotated, provides civil remedies for the denial of constitutional rights.  Section 1983 provides for damages or injunctive relief against any person who "under color of law," deprives another of any right, privilege, or immunity secured by federal law or the Constitution.

71.    This is coupled with Section 1985, which provides a civil remedy against conspiracies to commit a listed series of acts, ranging from forcible interference with processes of justice to deprivation of civil or constitutional rights, particularly those protected by the

Fourteenth Amendment, [Thiboutot vs. Maine, 44i8 U.S. 1 (1980)]. The Fourteenth amendment, ratified in 1868, is the nation's most far-reaching constitutional provision on civil rights. The amendment prohibits the denial to any person of the equal protection of the laws. Following the civil war, Congress enacted several civil rights statutes to give force to the newly ratified Fourteenth amendment, to dispel any doubt as to its constitutionality. Also, the Eighth amendment protects plaintiff's right to procedural due process under the Fourteenth amendment clauses against "unnecessary and wanton infliction of pain that is inflicted by officials' abusive conduct, or authority that causes harm, and injuries that were caused intentionally, unjustifiably, brutal and offensive to human dignity.

72.   Plaintiff has suffered a physical and mental injury as categorized by the Texas Penal Codes and the Eighth Amendment, as being maliciously and sadistically inflicted, which caused physical and psychological injuries when she was intentionally assaulted sexually by a public official acting under color of office/employment for the self-gratification, without the consent and/or permission of the plaintiff.

73.   After seeing and reviewing the security police video the following morning of the long, nightmarish night of events in which plaintiff suffered throughout the hands, probing and embarrassments and humiliations, plaintiff was denied any proper and lawful physical and mental evaluations to determine any further injuries caused by the rapist/sexual assaulter which is common practice in accordance to penal laws and procedures of a sexual, assaultive or violent criminal offense occurrence.

74.   Because of the denial of Due Process and Equal Protection of the Laws, during a criminal investigation case which involved plaintiff as being the victim in this case; the defendants failed to follow proper legal procedure in the investigation and evidence gathering

[22]

process, in which the assaulting officer was arrested and convicted on a much later date of the sexual assault of plaintiff.

75.     The Fourteenth Amendment's due process and equal protection clauses limit the state's power to act, but does not place an affirmative obligation upon the state to act; it does not guarantee "certain minimal levels of safety and security." DeShaney, 489 U.S. at 195. Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, it does have a duty and obligation to reasonable health, safety, security and basic human needs that violate the cruel and unusual punishment clause of the Eighth amendment; and the courts has recognized two exceptions to this rule: (1) substantive due process obligation; and, (2) procedural due process obligation.

76.     Furthermore, the due process clause requires that a law be specific enough to (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) establish determined guidelines for law enforcement.   Also, the Supreme Court has recognized that a state has a valid interest in protecting victims of sexual abuse from needless harassment, humiliation, and unnecessary invasions of privacy. [Michigan vs. Lucas, 500 U.S. 145, 150 (1991)].

77.     Whatever the scope of the "rights, privileges, powers and immunities," the sexual harassment provision of the official oppression statute proscribes conduct that at minimum, contains the following elements:  (1) an official's use of his official position; (2) to intentionally engage in conduct of a sexual nature or attempt to procure sexual favors; (3) which he knows is not welcomed by the recipient; intending submission to which to be a term or condition of the recipient's or another person's enjoyment of something of something of value to that person. [See Texas Penal Codes, sections 1.0007 (41) and 39.04].

[23]

78.     The fourth Amendment requires a judicial determination of probable cause as a prerequisite to the invasion of an individual's right to illegal searches ad invasion of one's personal body or body parts. [U.S. Const., Amend. 4 and 14; City of Cleburne vs. Cleburne Living Center, 473 U.S. 432. 439 (1985); Plyler vs. Doe, 457 U.S. 202, 216 (1982) (Equal Protection Clause commands that no sate shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a directive to treat all similar situated persons alike)].

79.     Because of the charge, conviction and sentence of defendant Peralez of the Texas Penal Code, specifically, Sec. 39.04 Violations of the Civil Rights of Person in Custody; Improper Sexual Activity with Person in Custody, any argument against him at this point would be an unnecessary extension of pages and would crowd this court's docket; therefore, plaintiff begins with all named defendants in this action.

80.     The City of La Joya, Texas is a local state government entity which is operated through the election and/or appointment of commissioners who make the policies in which runs, operates in which the city jail is operated on a day-to-basis and in its policy making for the city jail the city commissioners further allocate funding to for the jail in which is used for the hiring, training, education and specialized training procedures of its police officers, as well as for the purchasing of equipment; e.g. weapons, officer safety gear, and for the safety and protection of those in which the jails incarcerate.

81.     Because of the City of La Joya's policy makers deliberate indifference to the safety, security and health of the prisoners of the La Joya City Jail inmates because of its failure to adequately and sufficiently make interviews and personal criminal history investigations of the possible interviews and personal criminal history investigations of the possible officers for hire,

[24]

plaintiff suffered the direct physical and mental injuries of being sexually assaulted during an all nigh ordeal, and at the hands of an officer who has been known to have a terrible work record and criminal record.  [City of Canton, 489 U.S. 378, 391-92 (1989)].

82.     In the La Joya City Jail, there are several closed circuit television cameras in the jail which are linked to the monitors located in the dispatch area of the jail which are linked to the monitors located in the dispatch area of the jail for the purpose of maintain security and to monitor the safety of the jail for the purpose of maintaining security and to monitor the safety of its prisoners.

83.     The jail's policy and procedure manual specifically instructs jailers to give notification to the opposite sex/gender before entering the area; and furthermore, jailers are prohibited from the removal of female prisoners without another officer's presence.

84.     In the instant case matter, Officer Peralez, who was acting in his capacity as Communications Officer, when all other officers were out on patrol went into the area in which plaintiff was celled and commanded her to allow him to perform various different sexual assaults on her body, including but not limited to the insertion of his fingers, hands to other foreign objects.

85.     Thereby causing severe pain and injury to plaintiff's vaginal and buttocks areas, as well as embarrassment, anxieties, stress, sleepless night augmented by recurring nightmares and fear and anxiety that the events could repeat; also, plaintiff suffered physical pain from intrusions of her vagina and buttocks, loss of weight, concern for the well-being or her children and elderly parents; due to threats made against them by defendants if plaintiff sought recourse regarding the incident, and other inadequate policies, and carrying out of policies made by the

City's Board of Commissioners for the La Joya City Jail. [Monell, 436 U.S. at 690-94; Piotrorowski vs. City of Houston, 237 F.3D 567, 578 (5TH Cir.2010)].

86.     In order to hold a government entity liable for acts of a no policy making employee, the plaintiff must allege and prove that: (1) a policy or custom existed; (2) the government policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. [Meadowland Home for Children, Inc. vs. Gunn, 81 F.3 521, 532-33 (5th Cir. 1996)].

87.     Peralez was hired upon recommendation of Chief of Police Geovani Hernandez, who allowed Peralez to work in and around the City Jail and its inmates and defendant Ramon Gonzalez placed Peralez' application into process and recommended Peralez be hired through City Administrator Mike Alaniz.

88.     During the course of Peralez' employment, as a non-police officer, Mr. Peralez was instructed as to the rules, regulations and policies of jail restrictions as to the opposite sex/gender, and was provided a Jail Policy and Procedure Manual to read in its entirety to become familiar with the rules, regulations, and policies of the jail and therefore, the Chief(s), Mr. Gonzalez and Mr. Hernandez, were charged with keeping the discipline, safety, security, and training and education of the officers in and under his supervision.

89.     During the actual hiring of Communications Officer Peralez, he frequently showed up later for work, performing insufficiently in his assigned duties and other work related performances. It was a well-known fact to the Chief of Police and other officers that Peralez had a lack of responsibility and obeying the laws.

90.     Rather, Peralez was allowed to continue with is disobedience to his work ethics and policies of the La Joya Police Department and duties to the citizens of La Joya, Texas; and

[26]

placing others' lives in eminent danger of health, safety, life and security rights, privileges and immunities.

91.    Although Peralez was discharged from duties as a dispatch officer after the instant matter was brought to the public's attention, he was placed on disciplinary report and the policy makers and the Chief of Police not once acted in accordance to policy and laws of the State of Texas and of the La Joya City Jail.

92.    Specifically, Lieutenant Gonzalez informed Ranger Garcia that Perazlez was interviewed by the Chief of Police and was suspended on 5-30-2014, but Peralez submitted his resignation and no follow up investigation was ever conducted at the direction of the chief of police.  Texas Rangers Company "D" Division File RD 2015-00053; Page 5  (**See Plaintiff Exhibit 1**)

93.    Therefore, the City of La Joya, Texas and its Commissioners (policy makers) are liable for the injuries, sufferings, and constitutional violations committed against her by one of its employees, who created a danger [Clendon vs. City of Columbia, 258 F3 432 (5th Cir. 2001)], which because of the policy makers inadequate carrying out and ensuring the carrying out of policy increased the chances of plaintiff and others receiving such treatment from an undisciplined employees.

94.    In the instant case matter, plaintiff asserts that there was a continual and deliberate indifference to her health, safety security, protection, life and that of her children and elderly parents, when the assaulting officer was allowed to continue with his pattern of unconstitutional behavior that resulted in plaintiff's being sexually molested during an all-night assault upon her body.

95.     The two Chiefs of Police, Hernandez and Gonzalez knew of the existence and possibility of such indecent and immoral sexual acts being committed from the plain and obvious deficiencies of Peralez' work and criminal history but failed to take corrective and preventive measures to prevent such acts from ever occurring, when the acts were highly predictable when Peralez never received any proper training and/or disciplinary actions for his unconstitutional, unlawful, and unprofessional work habits and obeying the laws and was therefore deliberately indifferent to plaintiff's health, life, safety, security and injuries.

96.     Furthermore, both Hernandez and Gonzalez denied Plaintiff her rights, privileges and immunities to the procedures set forth by the Texas Legislature in the providing of physical and mental evaluations of sexual assault victims for the purpose of gathering evidence and in evaluating the amount of injuries suffered by the victim.  [See Prison Rape Elimination Act, 42 U.S.C. §15601 et. seq. (28 C.F.R., part 115); Texas Penal Codes, Chaps. 22 and 39; as well as Texas Occupations Codes].  Because of Peralez' background history while working at the La Joya City Jail, the two Chiefs of Police, as well as the City Commissioners should have concluded that Peralez was a "bad apple," and unfit to serve as a public servant and because of the inaction of both chiefs of police, the end result was that plaintiff suffered harmful sexual assault that lasted throughout the night, which was contrary to contemporary standards and human decency.

97.     Furthermore, a threat was made on her live, in the form of an explicit statement that she could "come up missing;" and the threat was extended to include her blind mother, as well as plaintiff's children. Plaintiff would argue further that her claim satisfies the threshold requirements of both "deliberate indifference" and "denial of due process and equal protection;"

and asserts further that defendants acted in their official capacities, under color of state law and/or employment.

## VII.
## INTENTIONAL INFLICTION OF EMOTIONAL STRESS CLAIM

98.     Webster's II New College Dictionary (2001 ed.) describes "horror" as meaning: (1) A strong and painful feeling of fear and repugnance. (2) Intense dislike. (3) One that causes horror.   (4) Something unpleasant, disagreeable, or ugly. (5) Intense nervous depression or anxiety.   [See also Estate of Trentadue vs. U. S. 560 F. Supp. 2d 1124].   In the instant case matter, plaintiff has suffered a physical and mental injury, as categorized by the Texas Penal Codes, the Eighth Amendment to the United States Constitution (as being repugnant to the conscience of mankind) from an all-night sexual assault incident upon her body by a public servant while acting under color of state law or employment.

99.     Without consent of plaintiff, she was forced by the officer to remove her bathing suit bottoms where he commenced to search, probe, and insert objects into her vagina and buttocks; including his fingers, hands, and other objects, forcing her to display her vagina and buttocks for an all-night self-satisfaction.

100.     Each of the defendants' action caused plaintiff to feel embarrassed, humiliated, fearful, cry and have countless nightmares, sleepless nights, anxiety, depression, worthlessness, and other forms of degradation.

101.     Additionally, plaintiff fears for her life and safety, as well as the lives and safety of her loved ones and family members; more specifically, her elderly parents, and children – due to the threat that "people come up missing all the time in the valley", whereas this type of behavior is contrary to the dignity and morals of contemporary society, and shocks the conscience, in contrary to laws and rights secured by both state and federal constitutions.

102.    The Eighth Amendment states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." [U.S. Const. Amend.8]. The supreme court has said that the use of excessive force against a prisoner can violate Eighth Amendment rights, holding that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment which is not a part of the prisoner's conviction. [Whitley vs. Albers, 475 U.S. 312, 319 (1986)].

103.    It is plaintiff's contention and assertion that the named and titled defendants herein violated her Eighth amendment right, privilege, and immunity of being free from cruel and unusual punishments and inflictions of pain, suffering, fear of life, mental stress, emotional anxiety, and other suffering; by failing to provide the protections and safeties required of defendants, after placing plaintiff under their care and custody.

104.    Not only did plaintiff suffer through an all-night ordeal of sexual abuse and assault upon her body parts, she was humiliated, horrified, and embarrassed and the matter was exacerbated by denying plaintiff procedural process of lawful police investigations into the matter, or any form of evidence gathering that would aid in substantiation of her claim, and provide evidence of her allegations.

105.    The primary perpetrator of the sexual assault performed these acts and while acting under the color of state law, he was well aware that he was committing a crime; but also knew that he would not be disciplined by the chief of police, or the municipality that employed him and as such, neither he nor his superiors, nor the municipalities named are immune from legal action, punitive damages, or any other relief the court deems just.

106.    Any reasonable person, would know that Officer Peralez' behavior was wrong, immoral, unjustified, and criminal and upon viewing video of his acts, his superiors and fellow

officers of two city police departments took no action to remedy the matter; not even conduct a perfunctory investigation, or facilitate a medical evaluation to determine the extent of plaintiff's mental and physical condition.

107.    Fourteenth Amendment Rights provide that "no state shall deprive any person of life, liberty, or property without due process of law," [U. S. Const. amend. 14], and the United States Supreme Court in Collins vs. Harker Heights, 503 U. S. 115, 126 (1991), which held that the due process clause was intended to prevent government officials... from abusing their power, or employing it as an instrument of oppression.

108.    Thus, since officials and officers in both agencies were actors in the entire process that included sexual abuse, and threatening plaintiff --rather than taking action to obtain medical attention for plaintiff's injuries, (admonishing plaintiff to just forget the matter), and giving no indication whatsoever that the initial perpetrator of the horrendous criminal act would be reprimanded or prosecuted for his illegal, immoral, and unconstitutional acts.

109.    Essentially, both city governments and their agents participated in a concerted attempt to deprive plaintiff of substantive and procedural due process rights.  Such blatant deprivation of plaintiff's secured constitutional rights resulted in subjecting her to physical pain and suffering, emotional and psychological trauma, and anxiety regarding the welfare of her family members; including her elderly mother, who is legally blind.

## VIII.
## SYNOPSIS OF PRISON RAPE AND ENACTMENT OF PRISON RAPE
## ELIMINATION ACT

110.    The United States Congress enacted *PRISON RAPE ELIMINATION ACT* because of this country's lengthy history of prison rape and sexual assault imposed on prisoners, by both guards and inmates alike.  The purpose of the act was to remove any doubt that such acts would

[31]

no longer be tolerated; essentially, making it clear that there would be "Zero Tolerance" for rapes and sexual assaults of prisoners. Additionally, federal funding for armor, equipment, vehicles, and other federally subsidized programs would also provide financial resources for training and technical assistance; in order to educate and train officials, agents and employees in the prevention of sexual assaults on prisoners. By receiving federal assistance, defendants inherently waive their right to immunity (qualified, or otherwise) when they have knowledge of the act, and fail to prevent or remedy the problem; prior to depriving plaintiff of her constitutional rights.

111.    Indeed, the Texas Legislature mandated further that prison and jail officials set guidelines and policies consistent with Prison Rape Elimination Act; including, but not limited to the Texas Penal Codes, Texas Code of Criminal Procedures, Texas Occupation Codes, Texas Health & Safety Codes, Texas Rules of Civil Procedure, and Texas Rules of Evidence.

112.    Relative to the instant matter, defendants displayed total disregard for both federal and state legislative enactments, criminal law, civil law, and administrative laws. As detailed above, their actions and omissions constitute absolute disregard for the very rights they were sworn to uphold, enforce, and/or prevent. Sadly, these defendants were the prime actors in engaging in precisely the type of behavior forbidden by Prison Rape Elimination Act.

## IX.
## BAD FAITH ANALYSIS

113.    A bad faith claim does not raise a federal question. This claim rides "piggy-back" upon the constitutional rights/claims grounded in civil rights violations. Before bad faith may be considered, plaintiff must first raise a federal constitutional question through a civil rights claim. Once this constitutional claim has been resolved on the merits in plaintiff's favor, then this court's jurisdiction enables bad faith to become cognizable.

114.   A Bad Faith Claim is actually directed toward the government's qualified immunity shield. Public officials enjoy protection from litigation, as they perform their duties. Every public official performing duties is imbued legally qualified immunity.  If a public official violates a clearly established legal or constitutional right, this immunity may be penetrated and the government can be held liable.  If the violation of a legal or constitutional right springs from bad faith judgment, the qualified immunity shield will prevail.  On the contrary, if the violation springs from willful misconduct, qualified immunity will yield and the government can be held monetarily liable.  In the immediate instance, defendants' actions and omission can clearly be construed as violations of willful misconduct and bad faith judgment.

115.   The touchstone for determining whether the violation of legal constitutional rights springs from bad judgment, or from willful misconduct has been defined in case law as follows. Statutory or constitutional rights must be so clearly established when the acts were committed that any officer in the defendants' position would have clearly understood that he/she was under an affirmative duty to have refrained from such conduct.  Plaintiff does not contend that the vast majority of individuals employed in positions similar to defendants would have acted in like fashion.  Rather, the exceptional actions of a few officers who are employed Penitas Police Department and La Joya Police Department form the grounds for this claim.

116.   Bad faith is more than bad judgment of negligence.  It requires a *mens rea*, or mental intent, which imports a dishonest purpose or moral obliquity.  This typically translates into the breach of a known duty through some motive of self-interest or ill will.  Bad faith differs from the negative idea of negligence in that it contemplates an affirmative state of mind, operating with furtive design by a self-serving motive.

[33]

## X.
## PRAYER

(§1983 Remedies-Declaratory/Injunctive Relief)

117.    **WHEREFORE,** in addition to the remedies previously requested under causes of action for Bad Faith Claims, Plaintiff further requests the following relief claim hereinafter referred to as U. S. Constitutional Claims:

118.    **Declaratory relief** stipulating that these defendants violated plaintiff's rights under the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and federal laws pursuant to Title 18 U.S.C., §241 and §242; and Title 42 U.S.C., §1983, §1985, §1986 while these defendants conspired to hinder, conceal, and prevent plaintiff from filing her constitutional claims against the arbitrary and sadistic violations which caused serious bodily injury and permanent psychological and emotional damage to plaintiff; while defendants were acting under color of state law and/or employment, when each defendant knew beyond a reasonable doubt that their actions and conduct of hindering, preventing, and concealing evidence for the purpose of preventing plaintiff from filing her civil rights complaint, and by hiring an unqualified person (Peralez) in the first place.

119.    A declaration that the acts and omissions described herein violated plaintiff's rights, privileges and immunities under the First, Fourth, Sixth, Eighth' Ninth and Fourteenth Amendments to the United States Constitution, laws of both federal and state governments (the State of Texas); as well as Administrative Rules, Regulations and Policies, and Standards that govern the behavior of jail staff and officials, as promulgated in their own rules, policies, and standards that govern jails within the State of Texas.

[Plaintiff further requests a *Jury Trial* on all issues triable by jury is demanded.]

Bad Faith Remedies/Monetary Damages

[34]

120.    **WHEREFORE**, subject to and dependent upon a ruling in Plaintiff's favor, upon one of the United States Constitutional Claims presented herein above, pursuant to §1983, plaintiff furthers the following monetary damages for Bad Faith.

121.    Punitive damages in the amount of $10,000,000.00.00 against each defendant, in their official capacities, for each defendant's intentional and purposeful intent to cause and deprive plaintiff of her constitutional rights under the "Due Process and Equal Protection of the Laws Clause," when each defendant acted under color of state law and/or employment, knowing that their acts and conduct was illegal, and deprived plaintiff of the safeguards and protections guaranteed and secured under the United States Constitution.

122.    Compensatory damages in the amount of $10,000,000.00 against Defendant Peralez for his intentional, purposeful, and harmful conduct, by intentionally and sadistically causing serious injury to plaintiff by sexually assaulting her, and which resulted in severe pain, suffering, and permanent psychological and emotional trauma; evinced by anxiety related to fear of future retaliatory acts which may be committed against her, her children, and/or her parents, and when any *reasonable officer* in a similar position, and acting in his individual capacity, would have known that such an act would have and could have caused serious bodily injury.

123.    **Compensatory damages** against defendants Hernandez, Gonzalez, and Garza, in the amount of $10,000,000.00 each in their official capacities when knowing that an illegal, immoral, and unconstitutional act of sadistic conduct had occurred by a fellow officer, and when having an opportunity to correct, remedy, or prevent further violations from happening, failed and refused to take appropriate action.  Instead, they attempted to cover-up, conceal, or otherwise hide the actions of Communications Officer Peralez; and took measures to coerce plaintiff into "forgetting the matter ever took place," and explicitly threatening plaintiff and her family by

stating that "people come up missing all the time in "The Valley."  Essentially, while acting under color of state law, defendants conducted themselves with total disregard for laws that govern the rest of Texas and the United States of America.

124.    **Compensatory damages** against Defendant Mike Alaniz for his duty and responsibility to ensure that only qualified candidates are hired to perform in the capacity of City of La Joya, Texas police officers and his failure to report a crime and conspire with Chief Geovani Hernandez, Lieutenant Ramon Gonzalez and Sergeant Ramos.

125.    **Punitive damages** against all named defendants in the amount of $10,000,000.00, in their individual capacities.

126.    **Nominal and punitive damages** in the amount of $10,000,000.00 from each defendant for the mental anguish, stress, anxiety, and fear caused by defendants, in the form of the actual sexual assault, in conjunction with the hiring of defendant Peralez, threats that followed the sexual assault, and failure to follow procedures for treatment of sexual assault victims; including (but not limited to) conducting a criminal investigation into the matter, and facilitating both medical and psychological evaluations.  Plaintiff also seeks awarding of punitive damages for all acts that stemmed from defendant Peralez' acts that are repugnant to mankind, and [certainly] had no penological goal or purpose of rendering peace or maintaining disciplinary order; but rather, intended to wantonly inflict unnecessary pain and suffering upon plaintiff, by the blatant, senseless, unprovoked, and unwarranted act of sexual assault; enhanced by further humiliation and disregard for policies, procedures, and laws that apply to rape victims, contrary to the Prison Rape Elimination Act.

127.    Defendants be ordered to pay all costs associated with this claim, as well as medical expenses; including but not necessarily limited to filing fees, attorney fees and expenses,

future medical treatment and hospital costs, and addressing of mental health issues arising from defendants' acts; past, present and future.

Any other relief that this court deems just and equitable under the law.

Respectfully submitted,

Tammy E. Henderson Peden
Attorney at Law
State Bar #     24037845
FID:            35242
7100 Regency Square Blvd., Suite 160
Houston, Texas 77036
Email:  tpedenlaw@netscape.net
Office:  713-476-0988
Fax:     713-244-2707
**ATTORNEY FOR PLAINTIFF**