UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AUTUMN RENEE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-281 |
| | § | |
| FELIPE SANTIAGO PERALEZ, III, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Now before the Court are Defendants Geovani Hernandez, Ramon Gonzalez, Julia Cruz, Feleciano Ramos, Mike Alaniz, and City of La Joya's ("City of La Joya Defendants") Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim, (Dkt. Nos. 22, 31);[1] Defendants Elizabeth Garza, Abelardo Gutierrez, Roel Bermea, and the City of Penitas's ("City of Penitas Defendants") Motion for Judgment on the Pleadings, (Dkt. No. 24); and Defendant Nancy Venecia's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 32). Also before the Court is Plaintiff Autumn Renee's Request for Entry of Default against Defendant Felipe Santiago Peralez, III, (Dkt. No. 39). After considering the Motions and the responsive briefing, (Dkt. Nos. 25, 28, 33, 34, 35, 36, 37, 38), the Court is of the opinion that Defendants' Motions to Dismiss and for Judgment on the Pleadings should be granted in part and denied in part and that Plaintiff's Motion for Entry of Default should be granted.

## I.      Factual and Procedural Background

Plaintiff Autumn Renee filed her Original Complaint in this Court on May 27, 2016.

---

[1] The Court notes that the City of La Joya Defendants filed two identical motions to dismiss Ms. Renee's First Amended Complaint. *Compare* (Dkt. No. 22) *with* (Dkt. No. 31). The Court treats the Motions as one, citing only to the latter-filed of the two, (Dkt. No. 31).

(Dkt. No. 1). She alleges that on May 29, 2014, after being arrested by officers of the Penitas, Texas Police Department and while being held in custody at the La Joya City Jail in La Joya, Texas, she was sexually assaulted by Defendant Felipe Santiago Peralez, III. *Id.* Ms. Renee further alleges that the remaining Defendants failed to provide her access to medical attention, to investigate the incident, or to report the assault to an independent law enforcement agency. *Id.* In her Original Complaint, Plaintiff alleged that Defendants violated her rights under the First, Fourth, Sixth, Eight, Ninth and Fourteenth Amendments of the United States Constitution, bringing claims against all Defendants pursuant to 42 U.S.C. § 1983, § 1985, and § 1986. *Id.* After the City of La Joya Defendants filed their first Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Dkt. No. 15), Ms. Renee sought to amend her complaint, (Dkt. No. 20), which motion this Court granted, (Dkt. No. 26).

## A.     Factual Allegations

The following is a summary of the facts of the case as alleged in Ms. Renee's Amended Complaint, (Dkt. No. 27). On May 29, 2014, Ms. Renee was arrested by an officer of the Penitas Police Department pursuant to a warrant for a misdemeanor probation violation and for failure to identify. She was transported to La Joya City jail pending her arraignment. While in custody at La Joya City Jail, Ms. Renee was approached by Defendant Felipe Santiago Peralez, III, who was at the time a Communications Officer with the La Joya Police Department. Mr. Peralez told Ms. Renee that he would "make things right for her if she wanted to use the phone." Mr. Peralez subsequently sexually assaulted Ms. Renee, inserting his fingers, his entire hand, and other objects painfully into her vagina and buttocks and forcing her to perform oral sex on him and to masturbate him. The incident was recorded on the jail's video surveillance system.

Ms. Renee alleges that, after the sexual assault, Defendants Hernandez, Gonzalez, Alaniz, Ramos, Cruz, Venecia, Bermea, Garza, and Gutierrez (collectively, the "Individual Defendants") learned about the assault but did nothing to provide her medical treatment, to gather evidence, or to report the assault to an independent law enforcement agency.

Specifically, during the incident on May 29, La Joya Officer Nancy Venecia noticed that Mr. Peralez was not at his station at the La Joya Police Department's Communications Desk and sent a text message to La Joya Officer Jose Bustillos asking him to come to the station. Upon arriving, Officer Bustillos saw Mr. Peralez inside the booking area with Ms. Renee and told him that he was not supposed to be there. La Joya Sergeant Feleciano Ramos was advised of the incident.

The next day, on May 30, Sergeant Ramos called La Joya Lieutenant Ramon Gonzalez and told him that Mr. Peralez had been seen inside the booking area with Ms. Renee. That day, Lieutenant Gonzalez, Sergeant Ramos, and then-La Joya Police Chief Geovani Hernandez reviewed a video recording of Ms. Renee's assault that was taken on the department's surveillance cameras. The three men watched the video up to the point where sexual contact is made, after which Chief Hernandez ordered Lieutenant Gonzalez and Sergeant Ramos to continue to review the video while he left the office to brief La Joya City Administrator Mike Alaniz about the assault. Subsequently, Lieutenant Gonzalez took a statement from Ms. Renee about the assault, at which point he declined Ms. Renee's request for medical attention. On the same morning, Lieutenant Gonzalez asked La Joya Officer Julia Cruz to take Ms. Renee to the women's restroom to see if Ms. Renee said anything about what had happened the night before. While in the restroom, Ms. Renee told Officer Cruz about the assault.

Later that day, while Ms. Renee was being transported from the La Joya City Jail to the

Penitas Police Department by Penitas Officer Elizabeth Garza, Ms. Renee told Officer Garza about the assault, which had occurred the night before. Officer Garza told her that she should "forget all about the incident and go on with her life, because 'people come up missing all the time in the valley.'" *Id.*, at ¶ 33. Officer Garza then told Penitas Police Chief Roel Bermea about the assault, and Chief Bermea had Officer Garza write a report of Ms. Renee's statement. Officer Garza also notified Penitas Lieutenant Abelardo Gutierrez about the assault.

Ms. Renee asserts that at no point was she examined or treated for the physical and mental injuries caused by the sexual assault. She also asserts that at no point was she examined for the purposes of collecting evidence regarding the assault. She asserts that, while Mr. Peralez was suspended on May 30 and eventually resigned, "no follow-up investigation was ever conducted at the direction of the Chief of Police." *Id.* at ¶ 73.

Indeed, it appears from the Amended Complaint that no further action was taken regarding the incident until more than 6 months later, on December 4, 2014, when Texas Ranger Robert Garcia learned about the incident while conducting a separate criminal investigation. Ranger Garcia's report, which includes statements from several of the City of La Joya Defendants regarding the incident, are incorporated in Ms. Renee's complaint. (Dkt. No. 27-1). Defendant Peralez was ultimately charged with—and pleaded guilty to—charges of Official Oppression under § 39.03 of the Texas Penal Code and Violating the Civil Rights of a Person in Custody under § 39.04 of the Texas Penal Code. *Id.*; *see generally State v. Peralez*, No. CR-4244-15-F (332nd Dist. Ct., Hidalgo County, Tex., filed August 20, 2015).

**B.     Overview of Claims Asserted**

In her Amended Complaint, Ms. Renee brings causes of action under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 against each Defendant, as well as claims for intentional

infliction of emotional distress against the Individual Defendants. (Dkt. No. 27). In addition to money damages, she seeks declaratory judgment that her rights under the Fourth, Eight, and Fourteenth Amendments were violated. *Id.* Before addressing Defendants' Motions, the Court first reviews the claims brought by Ms. Renee.

### 1. Claims Under § 1983, § 1985, and § 1986

Ms. Renee brings claims against each Defendant under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. (Dkt. No. 27). Section 1983 provides a cause of action against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under the U.S. Constitution. 42 U.S.C. § 1983; *see also*, *e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Id.* (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)). A plaintiff may bring a § 1983 claim against a person in his individual or official capacity, or against a local government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (municipalities and other local government units are "persons" subject to suit under § 1983). Meanwhile, Section 1985 provides a cause of action for three prohibited forms of conspiracy to interfere with civil rights, namely conspiracies using "force, intimidation, or threat," directed at preventing federal officers from performing their offices, 42 U.S.C. § 1985(1), conspiracies aimed at the right of participation in federal judicial proceedings, 42 U.S.C. § 1985(2), and conspiracies aimed at depriving any person or class of person of equal protection under the law or of preventing a person from lawfully voting, 42 U.S.C. § 1985(3); *see also*, *e.g.*, *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).

Section 1986, in turn, creates a cause of action against a person who knows of a conspiracy in violation of § 1985 and, having the power to prevent it, fails to do so. 42 U.S.C. § 1986.

Here, Ms. Renee has sued the City of La Joya, the City of Penitas (collectively, "the City Defendants"), and the remaining Defendants in their individual and official capacities for violations of her rights under the Fourth, Eight, and Fourteenth Amendments of the United States Constitution. (Dkt. No. 27). She asserts that the City Defendants failed to adopt constitutionally adequate policies designed to prevent sexual abuse of jail inmates and of properly addressing sexual abuse when it occurs. She asserts that this failure constituted deliberate indifference to her rights under the Constitution and/or under federal statutory law,[2] and that it was the moving force behind the deprivation of such rights. Specifically, Ms. Renee asserts that the City Defendants failed to have policies in place regarding:

A. A jail inmate's right to be free from sexual abuse and sexual harassment;
B. The right of inmates and employees to be free from retaliation for the reporting of sexual abuse and harassment;
C. The dynamics of sexual abuse and sexual harassment;
D. The common reactions of sexual abuse and sexual harassment victims;
E. How to detect and report signs of threatened and actual sexual abuse;
F. How to avoid inappropriate relationships with inmates;
G. How to comply with relevant state and federal laws related to the reporting of sexual abuse to outside authorities, including those having prosecutorial authority;
H. An adequate policy or procedure to document, through employee verification, that all City Police Department employees understand the training they have received;
I. Policies and/or procedure in place to timely cause victims of, or alleged victims of, jail sexual abuse, to be transported to appropriate medical facilities for purposes of medical examination, treatment, and gathering of evidence.
J. All applicable state laws regarding the receipt of, handling of, reporting of, complaints of in-jail sexual abuse and/or sexual harassment, and the victims of such sexual abuse . . . .

---

[2] With respect to such federal statutory law, Plaintiff specifically cites the Prison Rape Elimination Act, 42 U.S.C. 15601 *et seq.* (Dkt. No. 27, ¶ 56). Plaintiff also cites Chapters 22 and 39 of the Texas Penal Code and the Texas Occupation Code, which contain procedures regarding the provision of physical and mental evaluations of sexual assault victims for the purpose of gathering evidence. *Id.* at ¶ 76.

*Id.* at ¶ 55. With respect to the individual Defendants, Ms. Renee alleges specifically that each of them was "deliberately indifferent to her need for medical attention and treatment, [and] the need to arrange for transport . . . to a medical facility . . . for the purpose of examination, treatment, and gathering evidence." *Id.*, at ¶¶ 29, 34, 35, 37, 39, 41, 43.

Thus, for the purposes of her § 1983, § 1985, and §1986 claims, the Court considers that Ms. Renee alleges three distinct types of actionable conduct by Defendants: (1) the occurrence of the assault itself; (2) the failure to provide medical and psychological attention after the assault; and (3) the failure to gather evidence regarding the assault or to report it to some outside authority. (Dkt. No. 27). Each of these harms is distinct in terms of the questions they raise and the constitutional and statutory violations to which they may relate. With respect to the assault itself, Ms. Renee asserts a claim against Mr. Peralez for directly violating her Eighth and Fourteenth Amendment rights.[3] *Id.* at ¶ 24. As to the remaining Defendants, she also asserts a so-called "failure to protect" claim, in which she asserts that Defendants failed to protect her from the sexual assault by Mr. Peralez in violation of her Eighth and Fourteenth Amendment rights. *See Ard v. Rushing*, 597 Fed.App'x 213, 219 (5th Cir. 2014). With respect to the failure to provide medical and psychological treatment after the assault, Ms. Peralez has asserted a claim against Defendants for "deliberate indifference to serious medical need" under the Eighth and Fourteenth Amendments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Finally, with respect to the alleged failure by Defendants to gather evidence of the assault or to report it to an outside

---

[3] Ms. Renee also asserts that the assault itself violated her Fourth Amendment right to be free from "illegal searches and invasion of one's personal body or body parts." (Dkt. No. 27, ¶ 62). The claim for a violation of her Fourth Amendment rights appears to be brought only against Defendant Peralez and is not addressed by Defendants in their respective Motions now before the Court.

investigative authority, Ms. Renee has asserted a so-called "failure to investigate" claim.[4] *See Piotrowski v. City of Hous.*, 237 F.3d 567, 581–82 (5th Cir. 2001). In the Motions before this Court, Defendants seek dismissal of the second and third of these theories.[5]

### 2.     Intentional Infliction of Emotional Distress

In addition to her claims under § 1983, § 1985, and § 1986 Ms. Renee also brings a claim against Defendants for intentional infliction of emotional distress. The Texas tort of intentional infliction of emotional distress requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) said conduct caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993). The Texas Supreme Court has recognized that an intentional infliction of emotional distress claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex.1998).

Ms. Renee appears to bring a claim for intentional infliction of emotional distress not only against Defendant Peralez, the "primary perpetrator" of the sexual assault, but against all Defendants. (Dkt. No. 27), ¶¶ 78–86. She specifically alleges that Officer Elizabeth Garza's comment that "'people come up missing all the time in the valley,'" was an "intentional threat"

---

[4] Ms. Renee appears to have decided not to pursue this final theory, stating in her response brief that she "is not pleading that she has any constitutional right to an adequate investigation. The Constitutional right is to medical treatment." (Dkt. No. 25, p. 6). Accordingly, the Court does not address this theory of liability except to note that the Supreme Court has found that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another," which many lower Courts have interpreted to mean that a victim of a crime cannot bring suit for a failure to investigate or prosecute the alleged perpetrators. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see, e.g. Marsh v. Kirschner*, 31 F.Supp.2d 79, 81 (D.Conn. 1998); *Nieves-Ramos v. Gonzalez-De-Rodriguez*, 737 F. Supp. 727, 728 (D.P.R. 1990).

[5] Ms. Renee's claims against Mr. Peralez for the assault itself are not addressed in the Motions now before the Court.

that amounted to "extreme and outrageous" behavior. (Dkt. No. 27), ¶ 80. She also asserts that the remaining Defendants are liable for intentional infliction of emotional distress because "both city governments and their agents participated in a concerted attempt to deprive plaintiff of substantive and procedural due process rights . . . [which] resulted in subjecting her to physical pain and suffering, emotional and psychological trauma, and anxiety . . . ." *Id.* at ¶ 86.[6]

### 3. Claim for Declaratory Judgment

Finally, Ms. Renee brings a claim for declaratory judgment. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks omitted)). It has been understood to confer "unique and substantial discretion" on the courts, wherein the "normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* (citing *Wilton*, 515 U.S. at 286, 289). Specifically, Ms. Renee seeks declaratory judgment "that the complained-of acts and omissions of [Defendants] violated [P]laintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and federal laws pursuant to Title 18 U.S.C., § 241 and § 242; and Title 42 U.S.C. § 1983, § 1985, [and] § 1986 . . . ." *Id.* at ¶ 92.

## II. Defendants' Motions to Dismiss and for Judgment on the Pleadings

Defendants' Motions now before the Court present arguments that significantly overlap. Specifically, the City of La Joya Defendants seek dismissal of Ms. Renee's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[6] As explained below, Ms. Renee appears to have decided not to pursue her claims for intentional infliction of emotional distress against all but Defendants Peralez and Garza.

(Dkt. No. 31). Meanwhile, Defendant Nancy Venecia also seeks dismissal of Ms. Renee's claims on the same grounds, in a motion that is nearly identical to that submitted by the City of La Joya Defendants, but omitting the sections regarding claims against the City of La Joya. *Compare* (Dkt. No. 32) *with* (Dkt. No. 31). The City of Penitas Defendants have moved for Judgment on the Pleadings pursuant to Rule 12(c), which is subject to the same standard as a motion to dismiss under Rule 12(b)(6). (Dkt. No. 24); *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). Finally, Ms. Renee's Responses in Opposition to the City of La Joya Defendants' Motion to Dismiss, (Dkt. Nos. 25, 34), to Defendant Nancy Venecia's Motion to Dismiss, (Dkt. No. 33), and to the City of Penitas Defendants' Motion for Judgment, (Dkt. No. 28), are essentially identical to each other. Accordingly, the Court addresses the arguments presented by the Motions and Responses as having been presented together.[7]

Defendants' arguments as presented in their respective motions can be divided into four general categories: (1) that Ms. Renee has not stated claims under §§ 1983, 1985, or 1986; (2) that Defendants are immune to Ms. Renee's statutory claims pursuant to the doctrine of qualified immunity; (3) that Defendants are immune to Ms. Renee's claim for intentional infliction of emotional distress pursuant to the Texas Tort Claims Act; and (4) that Ms. Renee has failed to state a claim for declaratory relief. After addressing the applicable standard of review, the Court discusses each of these contentions in turn.

## A. Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Similarly, Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any

---

[7] In this regard, the Court cites to the City of La Joya Defendants' Motion to Dismiss, (Dkt. No. 31) for arguments made by all of the Defendants, citing to the remaining Motions only to specifically address arguments raised therein.

party may move for judgment on the pleadings." *Id.*, at 12(c). The Court evaluates a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under 12(b)(6) for failure to state a claim. *Gentilello*, 627 F.3d at 543–44. "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted) (internal quotations omitted)).

Rule 12(b)(6), in turn, is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**B.**     **Constitutional Claims under § 1983, § 1985, and § 1986**

In her Amended Complaint, Ms. Renee brings claims for violation of her constitutional rights pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986, which provide causes of action for the deprivation of a federal right under color of law, for conspiracy to obstruct the course of justice or to interfere with the equal protection of the laws, and for neglecting to prevent such a conspiracy, respectively. (Dkt. No. 27); 42 U.S.C. §§ 1983, 1985, 1986; *see also Bradt v. Smith*, 634 F.2d 796, 799–802 (5th Cir. Unit A Jan. 1981). Ms. Renee brings each of these claims for alleged violations of her Eighth and Fourteenth Amendment rights under the U.S. Constitution. *Id.* The La Joya Defendants, the Penitas Defendants, and Nancy Venecia each move for dismissal of each of these claims on the basis that: (1) Ms. Renee cannot show a violation of her Eight and Fourteenth Amendment rights under a theory of deliberate indifference to her serious medical need; (2) she cannot bring a §1983 claim against either the City of La Joya or the City of Penitas because she was failed to show some official policy, practice, or custom of the City that led to the alleged deprivation; and (3) she has not alleged the necessary facts to bring a claim for civil conspiracy under § 1985 or § 1986. (Dkt. No. 31). The Court addresses each of these arguments in turn.

### 1.     Eighth and Fourteenth Amendment Claims for Deliberate Indifference to Medical Need

Before addressing any of the statutory claims brought by Ms. Renee, the Court first addresses whether Ms. Renee has been deprived of a right secured by the Constitution or by federal law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and its laws.'"). In their respective Motions, Defendants argue that Ms. Renee has not properly alleged a cause of action for claims under the Eighth and Fourteenth Amendments for deliberate

indifference to a medical need. (Dkt. No. 31), pp. 3–5. Specifically, they argue that Ms. Renee has not pleaded any specific serious medical need she had, nor that she verbalized or expressed having such a need so as to make the Defendants aware of it. *Id.* at p. 4. In response, Ms. Renee argues that, given the type of assault she reported to Defendants, "anyone with common sense" would know that she needed medical care, and points to her allegations that her explicit requests for medical care were denied. (Dkt. No. 25, pp. 5–6).

In order to establish a violation of her right to medical care under the either the Eighth or Fourteenth Amendment,[8] Ms. Renee must show that Defendants were deliberately indifferent to her serious medical needs. *Estelle*, 429 U.S. at 104; *Hare v. City of Corinth*, 74 F.3d 663, 638–43 (5th Cir. 1996). A "serious medical need" is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345, n. 12 (5th Cir. 2006). Determining whether a defendant was "deliberately indifferent" requires a two-fold analysis: the defendant must (1) have subjective knowledge of a substantial health risk; and (2) disregard that risk by failing to take reasonable measures to abate it. *Id.* at 346. Such a showing requires evidence that prison officials "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or

---

[8] The Court notes that there is some dispute as to whether Ms. Renee's rights spring from the Eighth or the Fourteenth Amendment. Generally, "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment," while "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 663, 639 (5th Cir. 1996). However, in the case of detained parolees, as Ms. Renee asserts herself to have been, the Fifth Circuit has found that both the Fourteenth and Eighth Amendment standards to apply. *Hamilton v. Lyons*, 74 F.3d 99, 106 & n. 8 (5th Cir. 1996). Here, the Court considers this to be a distinction without a difference. "[W]here 'a pretrial detainee's claim is based on a jail official's episodic acts or omissions"—as opposed to 'general conditions, practices, rules, or restrictions of pretrial confinement'—the Fourteenth Amendment standard is the same as that under the Eight Amendment . . . . That is, 'liability . . . cannot attach unless the official had subjective knowledge of a substantial risk of a serious harm to a pretrial detainee but responded with deliberate indifference to that risk.'" *Ard*, 597 Fed. App'x at 218. (quoting *Hare*, 74 F.3d at 643, 650). In her Response to Defendants' Motion to Dismiss, Ms. Renee appears to concede that she has stated only an "episodic act or omission" claim. *See* (Dkt. No. 25) (advancing only under a theory of "deliberate indifference"). Accordingly, the Court does not consider the Eighth/Fourteenth Amendment distinction to be a useful one. *See Ard*, 597 Fed.App'x at 218.

engaged in any similar conduct that would clearly evince a w[a]nton disregard for any serious medical needs." *Bias v. Woods*, 288 F.App'x 158, 162 (5th Cir. 2008) (citations omitted). A prisoner's disagreement with her medical treatment is not actionable under § 1983 absent "exceptional circumstances." *Id.* (citing *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 & n. 8 (1994)).

Defendants argue that Ms. Renee "does not plead that she actually had any serious medical need at the time medical attention was allegedly denied her; nor pleads [*sic*] that any of the Defendants were in fact aware of a serious medical need to which they were deliberately indifferent." (Dkt. No. 31, p. 4). Instead, they argue, Ms. Renee "seems to simply assume that if someone is allegedly sexually assaulted, they must necessarily immediately have mental and/or physical injuries that need to be treated." *Id.* Indeed, Ms. Renee argues in response that "anyone with common sense knows that a female who has been sexually abused/assaulted for several hours . . . is likely to have suffered physical injuries" and to have been exposed to "various diseases." (Dkt. No. 25, at p. 5).

Ms. Renee's Amended Complaint alleges that she told each of the Individual Defendants about the assault, and that Defendants Gonzalez, Ramos, and Hernandez watched a video recording of the incident. It does not include any allegation that Ms. Renee informed those individuals of specific physical injuries she had suffered because of the assault. With respect to Defendant Ramon Gonzalez, Ms. Renee specifically alleges that she asked him to be taken to the hospital for medical treatment, and that he denied her request. The question before the Court, then, is whether the Defendants' actual subjective knowledge that a sexual assault occurred in

the manner witnessed in the surveillance video, paired with a denial of a request for medical attention in light of that assault, can alone satisfy the standard of deliberate indifference to a serious medical need. The Court finds that, under the specific facts plead in the Complaint in this case, it can.

The Court considers that the sexual assault alleged in this case presents the type of risk for harm for which the need for treatment is so obvious that "even laymen" would recognize that care is required. *See Gobert*, 463 F.3d at 345, n. 12. Furthermore, under these circumstances, and viewing the complaint in the light most favorable to Ms. Renee, the Court considers that the Defendants' knowledge of the substantial risk of harm to Ms. Renee can be inferred by the obviousness of the risk. *See Bias*, 288 F.App'x at 162. Notably, Ms. Renee alleges that the assault lasted "for hours," during which 49 contacts were made between her and Defendant Peralez, in which he inserted his "fingers, hands, and other objects into the buttocks and vaginal areas" of her body, "causing her to cry out in pain and fear" and resulting in physical and psychological harm to Ms. Renee. (Dkt. No. 27, ¶ 23). Ms. Renee's official statement regarding the incident to Ranger Garcia, attached to her Amended Complaint, indicates that Defendant Peralez "put his entire hand into [her] vagina," and put his fingers into her anus, which caused "tremendous pain," and which caused her to bleed from her vagina. (Dkt. No. 27-1, pp. 14–15). She alleges that Defendants Gonzalez, Ramos, and Hernandez watched a video recording of the assault, and that Defendant Alaniz was briefed of the contents of the video by Defendant Hernandez. Ms. Renee spoke directly with Defendants Gonzalez, Cruz, and Garza about the incident; she specifically alleges that Defendant Gonzalez declined her request for medical attention and that Defendant Garza told her that she should "forget all about the incident and go on with her life, because 'people come up missing all the time in the valley.'" *Id.*, at ¶¶ 25, 33.

Despite having been aware of the severity of the assault, and the obvious risk of physical and psychological harm to Ms. Renee, the Individual Defendants either refused to treat Ms. Renee or simply ignored her complaints.

In sum, Ms. Renee alleges that Defendants ignored the substantial risk of harm to Ms. Renee by refusing to treat her, ignoring her complaints, and otherwise failing to provide her any form of medical care despite their knowledge of the severity of the assault perpetrated against her. In the light of these facts, the Court does not agree with Defendants' argument that Ms. Renee failed to establish either that any Defendant had a subjective knowledge of a substantial risk of serious harm to Ms. Renee or that any Defendant responded with deliberate indifference to that risk. Accordingly, the Court denies the Defendants' motion to dismiss on this point.

### 2. Section 1983 Liability

Having decided that Ms. Renee has identified a constitutional right of hers that was violated, the Court next addresses Defendants' argument that Ms. Renee has nonetheless failed to state a claim for which relief can be granted under § 1983.

Section 1983 does not grant substantive rights; in order to state a claim upon which relief can be granted under § 1983, the complaint must show the deprivation of a right that is secured by the Constitution or by another federal law. *Bradt*, 634 F.2d at 799; *Carter v. Diamond URS Huntsville, LLC*, 175 F.Supp.3d 711, 731 (S.D. Tex. 2016). As explained above, the Court considers that Ms. Renee has presented a claim for the deprivation of her rights under the Eighth and/or the Fourteenth Amendments against Defendant Peralez for the assault itself and against the Individual Defendants and the City Defendants under both a "failure to protect" and a "deliberate indifference to serious medical needs" theory. In their respective motions, Defendants argue that Ms. Renee has not stated a claim against the City Defendants because she

has failed to state a policy, practice, or custom of the City Defendants that resulted in the deprivation of Ms. Renee's rights. (Dkt. No. 31), pp. 5–10. They further argue that Ms. Renee's claims against the Individual Defendants must be dismissed pursuant to the doctrine of qualified immunity. *Id.*, at pp. 20–16. The Court addresses each of these issues in turn.

### a. *Liability Based on Municipal Policy*

Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Carter*, 175 F.Supp.3d at 731–32 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). However, "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A municipality can only be liable where the municipality *itself* causes the constitutional violation at issue, namely when the execution of a custom or policy deprives the plaintiff of her constitutional rights. *Carter*, 175 F.Supp.3d at 732 (citing *Monell*, 436 U.S. at 690–91). Thus, in order to state a claim for municipal liability under § 1983, a plaintiff must identify (1) a policy maker, (2) an official policy, custom or widespread practice, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

In this case, the City Defendants have argued that Ms. Renee's claims against them must be dismissed because she has failed to allege a policy, custom, or widespread practice reasonably led to the deprivation of her rights. In doing so, Defendants seem to urge a false distinction between Ms. Renee's municipal liability theories, asserting that she has argued that the City is liable for: "1.) a failure to have policies in place to protect inmates from sexual abuse/assault; and 2.) a failure to have policies in place regarding investigating and gathering evidence of

sexual abuse/assault complaints/allegations." (Dkt. No. 31), p. 6.[9] In reality, Ms. Renee asserts that the City Defendants are liable for allowing the assault to occur in the first place in four ways: (1) by hiring and continuing to employ Defendant Peralez; (2) by failing to train and supervise their employees about sexual abuse, sexual harassment, and their prevention and detection; (3) by failing to adopt policies to investigate, document and report instances of sexual abuse and harassment when they occur and to punish officers who commit sexual abuse or help to cover it up, and (4) by failing to adopt policies to provide medical care for detainee victims of sexual abuse. (Dkt. No. 27, ¶¶ 55, 69–74). The Court considers that, in respect to the second, third, and fourth theories, Ms. Renee has stated a plausible claim for municipal liability against the City of La Joya under § 1983.[10]

*(i). Municipal Liability against the City of La Joya: Hiring and Employment*

Ms. Renee asserts that the City of La Joya and its policy makers are liable for the deprivation of her rights because of their hiring and continued employment of Defendant Peralez. She alleges that Defendant Peralez was hired upon recommendation of Defendants Hernandez and Gonzalez and with the approval of Defendant Alaniz, the La Joya City Administrator, purportedly because Defendant Peralez was at the time in a relationship with the granddaughter of the mayor of La Joya. (Dkt. No. 27), ¶ 69. She alleges that, during his employment as Communications Officer at La Joya PD, Peralez "frequently showed up later for work, performing insufficiently in his assigned duties and other work related performances." *Id.* at ¶ 70. She asserts that, although "[i]t is a well-known fact to the Chief of Police and other officers that Peralez had a lack of responsibility and [failed to obey] applicable policies and laws," they

---

[9] As explained above, the Court considers that Ms. Renee has decided not to pursue her "failure to investigate" theory of liability, and therefore the Court does not address it here.

[10] The Court notes that the City Defendants do not address in their 1983 analysis Ms. Renee's argument that they failed to have policies in place to provide medical care to detainee victims of sexual assault, and the Court therefore considers this unchallenged theory of liability to remain.

failed to discipline Mr. Peralez and continued to employ him. *Id.* This failure to fire or otherwise discipline Mr. Peralez, she alleges, placed "others' lives in eminent [sic] danger . . . ." *Id.* at ¶ 71.

To the extent Ms. Renee is alleging that the City of La Joya is liable for the violation of her rights because they failed to adequately screen Defendant Peralez's background before hiring him, the Court does not consider that Ms. Renee has alleged sufficient facts to support such a claim. "Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record . . . there is particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself." *Bd. Of Cty. Com'rs of Bryan Cty, Okla. v. Brown*, 520 U.S. 397, 411 (1997). For that reason, the Supreme Court has stated that, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policy maker to conclude that the *plainly obvious consequence* of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background" give rise to § 1983 liability. *Id.* (emphasis added)*; see also Rivera v. Bonner*, No. 16-10675, 2017 WL 2872291, at *4 (5th Cir. July 6, 2017) (finding that, because information regarding employee's prior arrest for indecency with a child, without more detail, was "vague and inconclusive, a jury could not find that a plainly obvious consequence of hiring [the employee] was that he would sexually assault a detainee"). Renee has failed to articulate any facts about Defendant Peralez's background that could plausibly have led a reasonable policy maker to conclude that he would violate a third party's rights, let alone that such a conclusion was a plainly obvious consequence of a decision to hire him. Even assuming that Defendant Peralez was unqualified for his job and was hired for political reasons, Ms. Renee has not articulated any nexus between these issues and the harm she suffered.

Similarly, to the extent Ms. Renee is alleging that the City of La Joya is liable for the violation of her rights because they failed to fire or otherwise discipline Mr. Peralez for showing up late and other performance issues, the Court does not consider there to be a sufficient nexus between the alleged performance issues and the harm that resulted to Ms. Renee. Ms. Renee does not explain, and the Court cannot see, how Defendant Peralez's tardiness, general lack of responsibility, or failure to comply with rules—no matter how severe—could plausibly have led a reasonable policy maker to conclude that he would violate a third party's federal rights.

Simply put, Ms. Renee has failed to identify anything about Defendant Peralez's employment or criminal history, either during or before the time of his employment, that would have put the City or its employees on notice that Defendant Peralez posed a threat to her or anyone else's federally protected rights. Accordingly, the Court must dismiss Ms. Renee's § 1983 against the City Defendants under this theory.

> (ii).    *Municipal Liability against the City of La Joya: Failure to Adopt Policies to Train Officers on Sexual Assault and Sexual Harassment, their Prevention, and their Detection*

Ms. Renee also asserts that the City of La Joya is liable for the assault under § 1983 because of its failure to have policies in place to train officers regarding what sexual abuse and harassment are, how to prevent them, and how to detect them when they occur. (Dkt. No. 27), ¶ 55. A municipality and its officials are liable under § 1983 for failure to train and supervise an officer only where the plaintiff establishes three elements: (1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Burge v. St. Tammany Parish,* 336 F.3d 363, 371 (5th Cir. 2003); *see also City of Canton v. Harris,* 489 U.S.

378, 389 (1989) ("The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.").

With respect to a municipality's failure to train or supervise its employees, "proof of a single violent incident ordinarily is insufficient" to establish liability. *See, e.g., Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). In a limited set of circumstances, however, a plaintiff may establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge*, 336 F.3d at 737 (citing *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001), *vacated*, 285 F.3d 1078 (2002)). This exception is both limited and narrow; it "will apply only where the facts giving rise to the violation are such that it should have been apparent to the policy maker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* (citing *Brown v. Bryan Cty.*, 219 F.3d 450, 461 (5th Cir. 2000)). Generally, therefore, a showing of deliberate indifference will require a showing of "'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Id.* (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

In their Motions to Dismiss, the City of La Joya Defendants argue that Ms. Renee cannot establish that the City of La Joya and its policy makers were deliberately indifferent to the risk of a sexual assault like the type experienced by Ms. Renee. Specifically, they argue that "Plaintiff does not plead any instances of prior sexual assaults at the jail." (Dkt. No. 31), p. 9. Defendants ask the Court to find that Ms. Renee cannot show a pattern of violations with regard to sexual

assault such that it would have been apparent to the City's policy makers that a constitutional violation was the highly predictable consequence of its failure to train or properly supervise its employees. (Dkt. No. 31, ¶¶ 8–9). The Court cannot make such a finding.

Accepting as true the well-pleaded facts in Ms. Renee's Amended Complaint, the City of La Joya had no policy of training its employees regarding sexual abuse or harassment, their prevention, or their detection. Furthermore, Ms. Renee has pointed to a pattern of violations that, viewed in the light most favorable to her, should have put the City's policy makers on notice that their training regarding sexual abuse and harassment, their prevention, and their detection was so inadequate so as to make her sexual assault more likely. *See Burge*, 336 F.3d at 737.

Specifically, Ms. Renee points to two cases in which the City of La Joya was found liable for instances of sexual harassment and abuse by its employees at the Police Department. (Dkt. No. 25, p. 10) (citing *Ortiz et al. v. City of La Joya, et al.*, No. C-807-05-F, (332nd Dist. Ct., Hidalgo County, Tex. Jan. 28, 2008)).[11] In *Ortiz v. City of La Joya*, in which both cases were consolidated, the court found that the plaintiffs, two women who were employed at the City of La Joya Police Department, had been sexually harassed and assaulted by their supervisor, La Joya Police Chief Isidrio Casanova. *See generally Ortiz*, Findings of Fact and Conclusions of Law (Jan 28, 2008). The assaults involved included instances of "offensive and unwelcome sexual physical contact," "sexual favors," and forced sexual intercourse. *Id.* at ¶¶ 15–65. The Court ultimately found the City of La Joya vicariously liable for the sexual harassment and sexual assaults perpetrated on the plaintiffs by Police Chief Casanova, finding that it "did not

---

[11] Although these cases were not addressed in Ms. Renee's Amended Complaint, she cited to them in her Response to Defendants' Motion for Summary Judgment. *See* (Dkt. No. 25, p. 10). As both a proper matter of which the Court may take judicial notice, and as an authority contained in a brief in connection with the Motions, the Court considers them at this phase without converting Defendants' Motions to motions for summary judgment. *See Warden v. Barnett*, 252 F.3d 1356, n. 1 (5th Cir. 2001) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)); *see also* Fed. R. Evid. 201.

exercise reasonable care to prevent and correct promptly any sexually harassing behavior." *Id.* at ¶¶ 111–12.

In addition to the previous litigation regarding instances of sexual assault at the hands of on-duty employees of the La Joya Police Department, Ms. Renee also points to the Prison Rape Elimination Act, which she argues was enacted by Congress "because of this country's lengthy history of prison rape and sexual assault imposed on prisoners, by both guards and inmates alike." (Dkt. No. 27), ¶ 87. She also points to Texas laws, guidelines, and policies consistent with the Act, which espouses a "Zero Tolerance" policy for rapes and sexual assaults of prisoners. *Id.* at ¶¶ 87–88. Indeed, the Prison Rape Elimination Act, enacted by Congress in 2003, includes findings that "at least 13 percent of the inmates in the United States have been sexually assaulted in prison," noting the "epidemic character of prison rape" and the "day-to-day horror experienced by victimized inmates." 42 U.S.C.A. § 15601(2), (11).

Viewing the prior instances of sexual assault on the part of La Joya Police Department employees in the light most favorable to Ms. Renee, the Court considers that she has properly alleged a pattern of violations sufficient to have put the City of La Joya and its policy makers on notice that its failure to adopt a policy of training its officers on the basics of sexual abuse and harassment made an assault like the one alleged by Ms. Renee more likely. The two previous cases involved instances wherein a male La Joya Police Department employee, while on the job, forced a woman to have sex with him. In light of the pattern of sexually abusive behavior by La Joya Police Department employees and the Congressionally recognized "epidemic character of prison rape" in the United States, the Court finds plausible that the City of La Joya should have been aware that its failure to train officers regarding sexual abuse and harassment, their prevention, and their detection put Ms. Renee and other female detainees in her position at risk

of having their rights violated. *See Rivera* , 2017 WL 2872291, at *4  (finding that a prior sexual assault of a female detainee by a jailer "should have alerted [jail administrators] that a substantial risk of serious harm existed in their facility and that they needed to do more to protect detainees from sexual exploitation"). Accordingly, it does not see fit to dismiss this claim on the grounds stated by Defendants.

      *(iii).*    *Municipal Liability against the City of La Joya: Failure to Adopt Policies regarding investigation, documenting, and reporting sexual abuse by officers and to punish officers for committing or covering up sexual abuse*

Ms. Renee has also stated a claim against the City of La Joya for its failure to adopt policies for investigating, documenting, and reporting sexual abuse by officers and to punish officers who commit or cover up sexual abuse. (Dkt. No. 27, ¶ 55). Here too, the City of La Joya Defendants argue that Ms. Renee cannot establish that the City of La Joya and its policy makers were deliberately indifferent to the risk of a sexual assault like the type experienced by Ms. Renee. Specifically, they argue that "Plaintiff does not plead any instances of prior sexual assaults, either at the jail or otherwise, by City employees being inadequately investigated or documented. [*sic*]" (Dkt. No. 31), p. 9. As with the City of La Joya's failure to adopt policies regarding basic training on sexual abuse and harassment, the Court considers that Ms. Renee has demonstrated a pattern at the City a failure to investigate, document, and report sexual abuse, and to punish employees who commit or cover up sexual abuse, which created a danger so obvious that the City should have known that its failure to adopt such policies made the complained-of assault more likely.

The two instances of sexual abuse by on-duty officers addressed in *Ortiz* included a finding that the City "did not exercise reasonable care to prevent and correct promptly any sexually harassing behavior." *Ortiz*, Findings of Fact and Conclusions of Law (Jan 28, 2008), at

¶¶ 111–12. Importantly, both instances involved scenarios in which Defendants Mike Alaniz and the City of La Joya failed to investigate the assaults at the time they were reported and to timely punish the offenders. *Id.* With respect to each of these instances, Defendant Mike Alaniz—who was also the City Administrator at the time of the assaults—failed to investigate the reports and intentionally destroyed evidence regarding the assaults. *See Ortiz*, Amended and Additional Findings of Fact and Conclusions of Law (Feb. 19, 2008). In light of the City of La Joya's and City Manager Mike Alaniz's pattern of failures to adequately investigate reports of sexual abuse and assault or to hold the offending officers accountable, the Court considers that the City of La Joya should have been aware that its failure to adopt policies regarding the investigation, documenting, and reporting of sexual abuse and of promptly disciplining officers who commit or cover up sexual abuse made the complained-of assault more likely. Accordingly, the Court does not see fit to dismiss Ms. Renee's claim on the grounds stated by Defendants.

### (iv). *Municipal Liability against the City of Penitas*

With respect to each of Ms. Rene's theories of § 1983 municipal liability, the City of Penitas Defendants argue that Ms. Renee has failed to identify either a policy maker or any set of facts which could be considered a "custom or widespread practice" so as to state a claim for municipal liability against it. (Dkt. No. 24), ¶¶ 10–11. Specifically, they assert that the City of Penitas does not have a jail—which is why Ms. Renee was placed in custody of the La Joya City Jail at the time the assault occurred—and that "any allegations regarding the administration, training, policy, procedures, customs, etc. as the moving factor causing Plaintiffs' constitutional violations cannot create liability for the City of Penitas." *Id.* at ¶ 11.

Indeed, the allegations made by Ms. Renee specifically regarding the City of Penitas or its employees are few. She alleges that on May 29, 2014 she was arrested by an officer from the

Penitas Police Department and subsequently transported to the La Joya City Jail. *Id.* at ¶ 22. She alleges that, the next day, Penitas Police Officer Elizabeth Garza transported her back to the City of Penitas, during which time she told Officer Garza about the assault and Officer Garza told her that she should "forget all about the incident and go on with her life, because 'people come up missing all the time in the valley.'" *Id.*, at ¶ 33. Finally, she alleges that Officer Garza informed Penitas Police Chief Roel Bermea and Sergeant Abelardo Gutierrez of what Ms. Renee had told her about the assault, to which Defendant Bermea had Officer Garza write a report. *Id.* at ¶¶ 38, 40.

Although Ms. Renee points to the same lack of policies and training at the City of Penitas as at the City of La Joya, she has failed to allege a pattern of similar violations arising from inadequate training or policies that would allow the Court to reasonably infer deliberate indifference on the part of the City of Penitas and its policy makers. Unlike with the City of La Joya, Ms. Renee has not alleged—and the Court is otherwise unaware of—any single incident of sexual abuse by employees of the City of Penitas that would have put the City and its policy makers on notice that their policies and training regarding sexual abuse were inadequate or that a future violation of constitutional rights was likely. Accordingly, the Court considers that Ms. Renee has not stated a claim for § 1983 municipal liability against the City of Penitas.

In sum, Ms. Renee makes a plausible claim that the City of La Joya failed to: (1) to train its employees regarding sexual abuse and harassment, their prevention, and their detection; (2) to have policies in place regarding the prompt investigation and reporting of sexually abusive behavior; and (3) to have policies in place regarding the punishment of officers who engage in sexually abusive behavior or who help cover up incidences of sexual abuse. The Court further finds that these failures amounted to deliberate indifference to Mrs. Renee's constitutional rights.

Accordingly, the Court does not see fit to dismiss Ms. Renee's § 1983 claim against the City of La Joya on the grounds presented by the La Joya Defendants. Ms. Renee has failed, however, to state a plausible claim for municipal liability against the City of Penitas on these grounds.[12]

### b.    *Liability of Individual Defendants*

Defendants also argue that Ms. Renee has failed to state a claim against the Individual Defendants. Aside from the arguments addressed above regarding Ms. Renee's claims for deliberate indifference to her serious medical needs, however, the Court notes that Defendants' argument on this front is limited to their invocation of the doctrine of qualified immunity. Because the qualified immunity defense also applies to Ms. Renee's claims under § 1985 and § 1986, the Court addresses it below after first determining whether Ms. Renee has stated a claim under those statutes. The Court merely notes at this juncture that Ms. Renee's § 1983 claims against Defendant Peralez remain unaddressed. Accordingly, the Court considers each of Ms. Renee's claims for liability against Defendant Peralez to remain intact.

### 3.    § 1985 and § 1986 Civil Conspiracy

Defendants argue that Ms. Renee's claims under § 1985 and § 1986 must be dismissed for failure to state a claim because she has failed to allege any race- or other class-based animus, which they assert is in integral part these claims. (Dkt. No. 31). The City of Penitas Defendants also argue that Ms. Renee has failed to allege any set of facts which amount to a conspiracy as required by § 1985. (Dkt. No. 24). Ms. Renee's response does not address either issue directly; she merely states that "she has pleaded a conspiracy on the part of the Defendants in this case to

---

[12] In allowing Ms. Renee's § 1983 claim against the City of La Joya to move forward, the Court also notes that she has sued all Defendants in their official and individual capacities. (Dkt. No. 27), ¶ 13. A suit against each Defendant who is a La Joya City employee in the employee's official capacity is treated as a suit against the City itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Conversely, the Court considers that, in finding that Ms. Renee has stated a claim against the City of La Joya, she has stated a claim against each of its officers named as Defendants in their official capacities. *See id.*

deny Plaintiff medical care due to an implied meeting of the minds of the Defendants to cover-up the sexual abuse/assault upon Plaintiff." (Dkt. No. 34, p. 15). Because the Court agrees with the City of Penitas Defendants that Ms. Renee has not alleged sufficient facts to establish a conspiracy as required by § 1985, it does not address the issue of class-based animus.

Title 42 U.S.C. § 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Ms. Renee does not specify which provision of § 1985 she invokes, but the particular provision is immaterial to the Court's analysis. Regardless of the particular provision invoked, § 1985 requires a showing of a conspiracy between two or more actors, and the Court considers that Ms. Renee has not alleged any facts indicating a conspiracy between any two Defendants.

It is settled law that a municipality and its employees cannot conspire in violation of § 1985. *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir.1998) (holding that defendant employees of the Houston Police Department could not conspire in violation of § 1985(3) because "a corporate entity and its employees constitute a 'single legal entity which is incapable of conspiring with itself'") (quoting *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir.1994)); *see also Swilley v. City of Hous.*, 457 Fed.App'x 400, 404 (5th Cir.2012) (holding that § 1985 claim against the City of Houston and the Houston Police Chief failed because the "City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves"). Here, for the purposes of § 1985, the City of La Joya Defendants function under the law as a single entity which cannot conspire against itself. The same can be said of the City of Penitas Defendants. Furthermore, Ms. Renee has failed to allege any specific factual occurrence or action on behalf of any Defendant which may tend to indicate a conspiracy between one or more

of the La Joya Defendants and one or more of the Penitas Defendants.

Indeed, the only indication in Ms. Renee's Amended Complaint that any of the La Joya Defendants ever communicated with any of the Penitas Defendants is that, "[o]n May 30, 2014 Penitas Police Officer, Elizabeth Garza notified [Penitas Police] Chief Roel Bermea of what plaintiff stated defendant Peralez had done to her while in La Joya City Jail and defendant Bermea advised Garza to write a report and further stated that the La Joya Chief of Police and Captain had already contacted him." (Dkt. No. 27), ¶ 38. Elsewhere in her Amended Complaint, Ms. Renee indicates that Penitas Police Chief Roel Bermea spoke to La Joya Police Chief Geovani Hernandez about the incident, but it is not clear whether this conversation was separate from the contact previously indicated. *See id.*, at ¶ 42. Regardless, the Court considers that the alleged communication between the Penitas and La Joya Police Department officials alone does not plausibly give rise to an inference of a conspiracy. The mere fact that the officials communicated, without more, does not give rise to an inference that they agreed to violate Ms. Renee's civil rights.

Furthermore, the Court notes that the alleged communication between Defendants Bermea and Hernandez occurred after the assault itself. To the extent that Ms. Renee intends to allege that Defendants Bermea and Hernandez conspired to cover up the incident, Ms. Renee alleges no other facts that may indicate an agreement between Defendants Bermea and Hernandez to do so. She does not allege any facts about what the two men spoke about, nor why, if they had agreed to cover up the incident, Defendant Bermea would thereafter instruct Officer Garza to write a report about the incident. *See* (Dkt. No. 27), at ¶ 42.

Similarly, the mere fact that the two Police Chiefs both failed to provide Ms. Renee medical care does not support an inference that they agreed to do so. *See Twombly*, 550 U.S. at

557 (conspiracy allegations must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."). Ms. Renee does not allege that she communicated with any of the City of Penitas Defendants until after Defendant Hernandez denied her request for medical attention, and it is unclear from the Amended Complaint when Defendant Hernandez spoke to Defendant Bermea. Ms. Renee alleges merely that: (1) on the morning of May 30, Defendant Hernandez denied her request for medical attention, and (2) at some point, Defendants Bermea and Hernandez spoke about the incident. She does not make any factual allegations about the content of the conversation between Defendant Hernandez and Defendant Bermea, any agreement they may have had, or any action Defendant Bermea took to deny Ms. Renee medical care. Accordingly, Ms. Renee has not alleged a plausible claim that the men conspired to deny her medical care.

In sum, Court does not consider that Ms. Renee has alleged sufficient facts to "permit the court to infer more than the mere possibility" of a conspiracy to violate her civil rights. *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Accordingly, her § 1985 claim does not withstand scrutiny under Rule 12(b)(6).

Ms. Renee's failure to state a viable claim under § 1985 is also fatal to her claim under § 1986. Title 42 U.S.C. § 1986 extends liability in damages to those persons "who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglect[] or refuse[] so to do . . . ." "This section on its face requires the existence of a valid claim under § 1985." *Bradt*, 634 F.2d at 801–02 (citing *Hamilton v. Chaffin*, 506 F.2d 904, 913–14 (5th Cir. 1975)). Accordingly, because Ms. Renee has not stated a valid claim under § 1985, she has also failed to state a claim upon which relief could be granted under § 1986.

C.    **Qualified Immunity**

Defendants also move for dismissal of Ms. Renee's claims on the basis of qualified immunity. A defendant sued in his individual capacity under § 1983 may assert the defense of qualified immunity, a doctrine that "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (*en banc*)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A plaintiff seeking to overcome a qualified immunity defense must show that (1) the defendant violated a federal constitutional right and (2) the right was "clearly established" at the time of the challenged conduct. *Whitley*, 726 F.3d at 638 (quoting *al-Kidd*, 131 S.Ct. at 2080). Courts have discretion to decide which prong to consider first. *Id.* A right is clearly established when "the law so clearly and unambiguously prohibited [the defendant's] conduct that *every* reasonable official would understand that what he is doing violates the law." *Morgan*, 659 F.3d at 371 (quoting *al-Kidd*, 563 U.S. at 741) (emphasis in original) (internal quotations and alteration omitted). To make such a finding, a court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (quoting *al-Kidd*, 563 U.S. at 2084) (internal quotations omitted). "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004).

As explained above, Ms. Renee brings two types of § 1983 claims against the Individual

Defendants: one claim for failing to protect her from the assault itself, and another for their deliberate indifference to her serious medical need after the occurred.[13] The Court addresses Defendants' qualified immunity defense as to each of these claims separately.

### 1. Failure to Protect Ms. Renee from the Sexual Assault

Ms. Renee alleges that the Individual Defendants failed to protect her from the sexual assault in violation of her constitutional rights. Defendants do not dispute that, at the time of the alleged assault, Ms. Renee had a right to bodily integrity, or that the assault by Mr. Peralez violated that right; they focus on whether Ms. Renee has sufficiently alleged that the Individual Defendants acted in some way to violate her rights by failing to prevent the assault itself. Specifically, Defendants assert that "Plaintiff pleads absolutely no facts that any of the Individual City Defendants engaged in a sexual assault of her, assisted Peralez in any alleged sexual assault of her or condoned any alleged sexual assault of her as it was occurring." (Dkt. No. 31), p. 13.

"The Constitution imposes a duty on officials to protect detained persons from unlawful harm." *Batiste v. City of Beaumont*, 421 F.Supp.2d 1000, 1005 (E.D. Tex. 2006). "An official cannot stand idly by, but rather must intervene or take other reasonable action to protect a detained person from known danger." *Id.* An official who exhibits deliberate indifference to the safety of a person in custody is liable for failure to protect. *Farmer*, 511 U.S. at 833. An official is deliberately indifferent when the official is aware of facts from which an inference can be drawn that a serious risk of harm exists, actually draws the inference, and then disregards the risk. *Id.* at 837. An act or omission unaccompanied by subjective knowledge of a significant risk of harm—that is, a significant risk of harm that an official should have perceived but did not— does not amount to deliberate indifference. *Id.* Thus, in order for Ms. Renee to overcome the qualified immunity defense with respect to each Individual Defendant's failure to protect her

---

[13] As noted above, the Court considers that Ms. Renee has abandoned her "failure to investigate" claim.

form the assault by Defendant Peralez, she must allege that the Defendant (1) was aware of facts from which an inference could be drawn that Ms. Renee would be or was being sexually assaulted; (2) actually drew the inference; and (3) disregarded the risk of harm that the sexual assault presented to Ms. Renee.

The Court determines that Ms. Renee has not alleged sufficient facts to allow the Court reasonably to infer that any of the Individual Defendants actually drew an inference that she would be or was being sexually assaulted by Defendant Peralez. As explained above with respect to the City Defendant's § 1983 liability, Ms. Renee has failed to identify anything about Defendant Peralez's employment or criminal history, either during or before the time of his employment, that would have put the Individual Defendants on notice that Defendant Peralez would have committed a sexual assault against Ms. Renee. Accordingly, in determining whether the Defendants were aware of facts from which an inference could be drawn that Ms. Renee would be or was being sexually assaulted, the Court only considers what the Individual Defendants knew about the situation in the La Joya City jail leading up to and during the assault on the night of May 29.

Defendant Venecia is the only named Defendant alleged to have had any knowledge of facts that could conceivably give rise to an inference that Ms. Renee would be or was being sexually assaulted on the evening of May 29. Ms. Renee's Amended Complaint itself does not contain any explicit allegations regarding what the Individual Defendants knew, if anything, about the assault before it began or while it was happening. However, the investigative report from Ranger Garcia, attached to Ms. Renee's Amended Complaint, contains a statement from Defendant Venecia, which reads in part:

> During the night [of May 29] I was inside the building working on reports when I realized something odd was going on with

> [Defendant Peralez] because of the radio traffic between him and our patrol officers. I was monitoring the radio with my hand held and it seemed that the officers on the road had to repeat their traffic because [Peralez] kept repeating Major 10-1[,] which signifies static on the radio and unable to copy. I could hear the radio traffic and at one time I went to check on communications and did not find him there and thought that maybe he was in the restroom. I went back to working on reports and the radio problems with [Peralez] and ou[r] patrol officers continued and I then contacted Officer Bustillos to come by the building and check with communications. After he arrived he reportedly found [Peralez] in the jail area talking with the female prisoner.

(Dkt. No. 27-1), p. 20. The Court considers that, viewing this statement in the light most favorable to Ms. Renee, it is not reasonable to infer that Defendant Venecia was aware of facts from which an inference could be drawn that Ms. Renee would be or was being sexually assaulted that evening, let alone that she actually drew such an inference. Defendant Venecia did not see Ms. Renee nor Defendant Peralez; at most, she found it odd that Defendant Peralez was not at his post and assumed that he was in the restroom. Furthermore it was not Defendant Venecia who saw Defendant Peralez in the cell block with Ms. Renee, but Officer Bustillos, who is not a named defendant in this case. Ms. Renee has not alleged sufficient facts to allow a reasonable inference that Defendant Venecia or any other Individual Defendant was aware of any facts that should have supported an inference that Ms. Renee would be or was being sexually assaulted by Defendant Peralez.

Because the Court finds that Ms. Renee has not established that any of the Individual Defendants were deliberately indifferent to Ms. Renee's safety regarding the underlying sexual assault, Ms. Renee cannot overcome the qualified immunity defense to her "failure to protect" claim with respect to these Defendants. Accordingly, the Court moves on to assess whether Ms. Renee can overcome the qualified immunity defense with respect to her claim that the Individual Defendants were deliberately indifferent to her serious medical needs.

## 2. Deliberate Indifference to Ms. Renee's Serious Medical Needs after the Assault Occurred

The Court has already determined that the Defendants' collective response to the sexual assault of Ms. Renee by Defendant Peralez amounted to deliberate indifference to her serious medical needs. Therefore, the Court's qualified immunity analysis focuses on the second prong of the defense: whether the constitutional right at issue was clearly established as of May 30, 2014, the date of the alleged violation. *See* (Dkt. No. 27). As with her right to bodily integrity, Defendants do not dispute that Ms. Renee's right to access to medical care was clearly established in the abstract, but assert that Ms. Renee "fails to allege that she was in need of immediate medical attention, nor that she communicated such a need to the individual city defendants." (Dkt. No. 31), pp. 13, 14. They further assert that Ms. Renee "does not plead any facts that she requested to go to the hospital for examination and was refused," and that she "does not even plead facts that each [I]ndividual Defendant was aware that she was claiming to have been sexually assaulted and the alleged manner and method of such sexual assault." *Id.* at pp. 14, 16.

With respect to the majority of the Individual Defendants, the Court agrees that Ms. Renee has not established their requisite subjective knowledge of her medical needs. In order to overcome the qualified immunity defense, Ms. Renee must allege facts by which an inference can be drawn that *every* reasonable official in the Individual Defendants' position would realize that *not* providing medical care to Ms. Renee violated the law. As explained above, in the context of deliberate indifference to a serious medical need, this includes a finding that the Individual Defendant: (1) had subjective knowledge that Ms. Renee, by virtue of the sexual assault, had been exposed to a health risk so substantial that "even laymen would recognize that care is required"; and (2) that they disregarded that risk by failing to take reasonable measures to

abate it, such as by refusing to treat her, ignoring her complaints, or engaging "in any similar conduct that would clearly evince a w[a]nton disregard for any serious medical needs." *Gobert*, 463 F.3d at 345–46; *Bias*, 288 F.App'x at 162 (5th Cir. 2008). The Court addresses each of these in turn.

### a. The Individual Defendants' Subjective Knowledge of the Substantial Health Risk the Assault Posed to Ms. Renee

The Court has already found that, viewing Ms. Renee's factual allegations of the assault in the light most favorable to her, the sexual assault alleged in this case presents the type of risk for harm for which the need for treatment is so obvious that "even laymen" would recognize that care is required. It also found that the Individual Defendants' knowledge of the substantial risk of harm to Ms. Renee from the assault can be inferred by the obviousness of that risk. However, central to this theory is that the Individual Defendants subjectively knew enough about the assault such that any reasonable official in their position would have inferred the substantial risk of harm to Ms. Renee.

With respect to the majority of the Individual Defendants, the Amended Complaint is unclear regarding what details they knew about the assault. Ms. Renee alleges that Defendants Gonzalez, Ramos, and Hernandez watched a video recording of the incident. (Dkt. No. 27), ¶ 28. The Court considers that, having viewed the video recording, these three defendants had subjective knowledge of the substantial health risks the assault posed to Ms. Renee. However, aside from Defendant Peralez himself, these three are the only Defendants who had first-hand knowledge of the assault, and Ms. Renee does not allege with specificity of what, if any, details of the assault the remaining Individual Defendants had knowledge.

Defendants Cruz and Garza spoke directly with Ms. Renee about the incident. *Id.* at ¶¶ 32, 36–37. The report attached to Ms. Renee's Amended Complaint indicates that Ms. Renee

told Defendant Garza that Defendant Peralez had "penetrated her vagina with his fingers," but does not include any details about what Ms. Renee told Defendant Cruz, aside from the fact that the assault occurred. (Dkt. No. 27-1), pp. 10, 23–24. Similarly, with respect to Defendants Alaniz, Venecia, Gutierrez, and Bermea, the Amended Complaint contains only an averment that these Defendants "learned of the incident" or where told "what plaintiff stated [D]efendant Peralez had done to her," without more. (Dkt. No. 27), ¶¶ 29, 32, 35, 38–41.

The Court considers that, with exception to Defendants Gonzalez, Ramos, and Hernandez, Ms. Renee has not alleged sufficient facts to establish that the Individual Defendants subjectively knew enough details about the assault such that the substantial health risk it posed to her would have been obvious to them.

> ### b. The Individual Defendants' Wanton Disregard for Ms. Renee's Serious Medical Needs

Having determined that Defendants Gonzalez, Ramos, and Hernandez were the only three Individual Defendants to have the requisite knowledge of the assault suffered by Ms. Renee such that they are charged with knowing that the risk it posed to her was substantial, the Court must determine which, if any, of these Defendants disregarded that risk by engaging in conduct that clearly evinces a wanton disregard for Ms. Renee's serious medical needs. The Court concludes that Ms. Renee has established this with respect to Defendant Gonzalez, but not with respect to Defendants Ramos and Hernandez.

The law is well established—and was well established on May 30, 2014—that an officer is deliberately indifferent to the serious medical needs of a detainee in violation of her rights under the Eighth and/or Fourteenth Amendment when, while subjectively aware of an "excessive risk to a prisoner's health and safety," the officer "refuse[s] to treat [her], ignore[s] [her] complaints, intentionally treat[s] [her] incorrectly, or engage[s] in any similar conduct that would

clearly evince a w[a]nton disregard for any serious medical needs." *Bias*, 288 F.App'x at 162; *see also Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001); *Estelle*, 429 U.S. at 107.

With respect to Defendants Ramos and Hernandez, Ms. Renee fails to allege any facts that would tend show that they acted in wanton disregard to her needs such that every reasonable officer would know that their actions violated the law. She does not allege, for example, that they refused to treat her, that she complained to them of any symptoms of the sexual assault, or that they were in a position to provide Ms. Renee medical care. *See Bias*, 288 F.App'x at 162. Indeed, the Court considers that a reasonable officer in Defendants Ramos and Hernandez's position would have considered that Defendant Gonzalez—who took it upon himself to interview Ms. Renee alone in his office—was in the best position to determine, based on what the three of them had seen in the video, if Ms. Renee believed that she needed medical attention. *See* (Dkt. No. 27-1, p. 61) (indicating that Defendant Hernandez asked Defendants Ramos and Gonzalez to view the video while he went to brief Defendant Alaniz); *see also id.* at pp. 61–62 (indicating that, after Defendants Ramos and Gonzalez started to interview Ms. Renee about the assault, Defendant Gonzalez asked Defendant Ramos to leave the booking area and conducted the interview with Ms. Renee alone in his office).

In contrast, the Court considers that Ms. Renee has alleged sufficient facts that, viewed in the light most favorable to her, establish that Defendant Gonzalez acted with wanton disregard to her serious medical needs. The Amended Complaint alleges that Defendant Gonzalez watched the entire video of the assault and that he personally interviewed Ms. Renee in his office about the assault. (Dkt. Nos. 27, 27-1). She alleges that Defendant Gonzalez "viewed the video in plaintiff's presence, confirmed the sexual encounter with plaintiff, [and] obtained her written

statement," and, most significantly, that he "declined [her] request for medical attention, despite the fact that defendant Gonzalez had full knowledge" of the nature of the sexual assault. (Dkt. No. 27, ¶ 25–26). Viewing these facts in the light most favorable to Ms. Renee, the Court considers that she has sufficiently alleged that Defendant Ramon Gonzalez violated her clearly established constitutional rights by declining her request for medical attention.

It is clear to the Court that, viewing Ms. Renee's factual allegations in the light most favorable to her, every reasonable officer with Defendant Gonzalez's knowledge of the sexual assault she suffered would have known that refusing her request for medical care was illegal. Accordingly, the Court determines that Ms. Renee has alleged sufficient facts to overcome the qualified immunity defense invoked by Defendant Gonzalez as to her § 1983 claim against him for deliberate indifference to her serious medical needs. As to the remaining Individual Defendants, the Court finds that Ms. Renee has not overcome the defense of qualified immunity as to her claim under § 1983 that they failed to protect her from the assault or that they were deliberately indifferent to her serious medical needs.[14]

### D.     Intentional Infliction of Emotional Distress

Ms. Renee also brings a claim against Defendants for intentional infliction of emotional distress. At the outset, the Court notes that Ms. Renee's Amended Complaint is unclear as to against whom she intends to bring her claim for intentional inflection of emotional distress, and

---

[14] The Court notes that Defendants have also specifically argued that Ms. Renee has not alleged sufficient facts to overcome the qualified immunity defense with respect to Defendant Hernandez, the La Joya City Police Chief, under the criteria for § 1983 liability of police chiefs as recognized in *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996). (Dkt. No. 31), pp. 14–15. Nonetheless, Ms. Renee does not specifically address this argument in her response, nor does she explain how the *Baker* criteria are alleged with respect to Defendant Hernandez in her Amended Complaint. *See* (Dkt. No. 24), p. 17 (stating only that "[u]pon development through discovery of information that is in the possession of the Defendants, Plaintiff may very well be able to plead a cognizable claim of a failure to train and/or supervise on the part of individual Defendant Geovani Hernandez."). Accordingly, the Court considers that—even if Ms. Renee had pled *Baker* liability against Mr. Hernandez—she has abandoned such a theory.

for what behavior. *See* (Dkt. No. 27), ¶ 78–80 (specifically alleging tortious behavior committed by Defendants Peralez and Garza); ¶¶ 81–86 (including, in the same discussion, allegations regarding all Defendants' failure to investigate the assault or provide Ms. Renee medical attention after the assault). In her Response to Defendants' Motions, Ms. Renee states that "she had specifically named two individual party Defendants in the context of her pendent state law claim," and that Defendants' assumption that she sued all of the named Defendants for this claim was "improper." (Dkt. No. 34), ¶ 1. Accordingly, the Court considers that Ms. Renee brings her claim for intentional infliction of emotional distress only against Defendants Peralez and Garza.[15]

As noted above, none of the Motions now before the Court seek dismissal of the claims brought against Defendant Peralez. Accordingly, the Court considers Ms. Renee's claim against him for intentional infliction of emotional distress to remain intact.

As to Defendant Garza, Defendants argue that Ms. Renee's claims must be dismissed because, as an employee of a government entity, Defendant Garza is immune for any intentional torts. (Dkt. No. 24), ¶ 22. In doing so, however they cite only to the language of the Texas Tort Claims Act that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* (citing TEX. CIV. PRAC. & REM. CODE §101.106(e)). Nonetheless, as explained above, the Court considers that Ms. Renee has brought a claim for intentional infliction of emotional distress only against Defendants Peralez and Garza. Accordingly, the provision cited by Defendants is not applicable. Furthermore, Defendant Garza invokes no other

---

[15] Because the Court finds that Ms. Renee only brings her claim for intentional infliction of emotional distress against Defendants Peralez and Garza, it does not address Defendants' argument that her claim against the City Defendants should be dismissed because as barred by the "election of remedies" provision of the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. § 101.106(e). *See, e.g.* (Dkt. No. 31), p. 20.

defense, affirmative or otherwise, against the claim of intentional infliction of emotional distress against her. *Id.*[16]

Defendant Garza has raised no defense against Ms. Renee's claim against her for intentional infliction of emotional distress except to invoke § 101.106(e), which the Court deems inapplicable here. Furthermore, Defendant Peralez has failed to move for dismissal of this claim. Accordingly, the Court does not see fit to dismiss Ms. Renee's claim against either Defendant Garza or Defendant Peralez.

## E.    Declaratory Relief

Finally, Defendants seek to dismiss Ms. Renee's claim for declaratory relief because she has failed to identify any facts supporting a finding that there is a real or immediate threat of future harm to her. (Dkt. No. 31), pp. 16–17. The Court agrees.

In addition to her request for money damages, Ms. Renee seeks a declaratory judgment that "the complained of-acts and omissions of these defendants violated plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution" and federal statutory laws. (Dkt. No. 27), ¶ 92. However, Ms. Renee does not undertake to allege any facts that would show her entitlement to a declaratory judgment in this case.

"The purpose of the Declaratory Judgment Act is . . . to settle actual controversies before they ripen into violations of the law or breach of avoidable damages to those uncertain of rights." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir.1993) (citing *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1950)). Accordingly, The Supreme Court

---

[16] The Court notes that the La Joya City Defendants appear to attempt to raise the affirmative defense of official immunity against any claim brought by Ms. Renee against Defendants Hernandez, Gonzalez, Cruz, Ramos, and Alaniz. *See* (Dkt. No. 31), p. 20 ("To the extent Plaintiffs sue these City Defendant police officers and City administrator Alaniz individually in this lawsuit for intentional infliction of emotional distress, she is seeking to hold them liable for actions taken during the course and scope of their activities as City employees."). Nonetheless, Defendant Garza raises no such defense in her Motion. (Dkt. No. 24). Accordingly, the Court does not address it here. *See Casanova v. City of Brookshire*, 119 F.Supp.2d 639, 666–67 (S.D. Tex. 2000) ("Official immunity is an affirmative defense which places on the defendant the burden of establishing all its elements.").

held in *City of Los Angeles v. Lyons* that a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that she will be wronged again. 461 U.S. 95, 111 (1983); *see also Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997). Simply put, Ms. Renee fails to allege any "real or immediate threat" of harm to her in the future that would entitle her to a declaratory judgment. Accordingly, the Court sees fit to dismiss her declaratory judgment claim.

### III. Plaintiff's Request for Entry of Default against Defendant Peralez

Lastly, the Court addresses Ms. Renee's request for entry of default against Defendant Peralez, (Dkt. No. 39). Her Motion is accompanied by an affidavit stating that Defendant was properly served with, and received, Ms. Renee's First Amended Complaint, and that he has failed to file an answer to the First Amended Complaint. *Id.*

The Court finds that, although Defendant Peralez filed an answer to Ms. Renee's Original Complaint on July 26, 2016, he has failed to respond to her Amended Complaint within the time allowed by law. *See* (Dkt. Nos. 7, 20, 27); Fed. R. Civ. P. 15(a)(3). Defendant Peralez has also failed to move for dismissal or "otherwise defend" against Ms. Renee's Amended Complaint. *See id*. Therefore, the Court considers that default should be entered against Defendant Peralez. *See* Fed R. Civ. P. 55(a).

### IV. Conclusion

As explained above, the Court considers that Ms. Renee has articulated claims against Defendant Felipe Santiago Peralez, III under 42 U.S.C. § 1983 for violating her Fourth, Eighth, and Fourteenth Amendment rights and for intentional infliction of emotional distress.

With respect to Ms. Renee's claims against the remaining Individual Defendants under 42 U.S.C. § 1983, the Court considers that Ms. Renee has abandoned her claim against all

Defendants for their alleged failure to investigate and report the assault after it occurred. Ms. Renee cannot overcome Defendants' qualified immunity defense to her claim based on their alleged failure to protect her from the assault. Finally, with respect to each of the Individual Defendants except for Defendant Ramon Gonzalez, Ms. Renee cannot overcome Defendants' qualified immunity defense to her claim based on their alleged deliberate indifference to her serious medical needs after the assault occurred.

With respect to Ms. Renee's claims under 42 U.S.C. § 1983 against the City Defendants, Ms. Renee has failed to identify a similar pattern of violations resulting from inadequate training and policies to support liability against the City of Penitas. By contrast, Ms. Renee has identified a similar pattern of violations to demonstrate liability of the City of La Joya for its failure: (1) to train its employees regarding sexual abuse and harassment, their prevention, and their detection; (2) to have policies in place regarding the prompt investigation and reporting of sexually abusive behavior; and (3) to have policies in place regarding the punishment of officers who engage in sexually abusive behavior or who help cover up incidences of sexual abuse. Finally, the Court concludes that this theory also sustains liability against the La Joya City Defendants in their official capacities.

The Court finds that Ms. Renee has brought claims for intentional infliction of emotional distress only against Defendants Elizabeth Garza and Felipe Santiago Peralez, III. Accordingly, Defendants' motions to dismiss her claims for intentional infliction of emotional distress against the remaining defendants are moot.

Because she has failed to allege sufficient facts to support a finding that any two or more Defendants conspired with each other to violate her civil rights, Ms. Renee has failed to state a claim for which relief can be granted under 42 U.S.C. § 1985 and 42 U.S.C. § 1986. Ms. Renee

also has failed to allege any real or immediate threat of harm to her in the future that would entitle her to declaratory relief.

Finally, the Court considers that Ms. Renee has shown her entitlement to an Entry of Default against Defendant Peralez. For these reasons,

It is hereby **ORDERED** that the City of La Joya Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim, (Dkt. Nos. 22, 31), is hereby **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that the City of Penitas Defendants' Motion for Judgment on the Pleadings, (Dkt. No. 24), is hereby **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Defendant Nancy Venecia's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 32), is hereby **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Plaintiff Autumn Renee's Request for Entry of Default against Defendant Felipe Santiago Peralez, III, (Dkt. No. 39), is hereby **GRANTED**.

Accordingly,

It is hereby **ORDERED** that Plaintiffs' claims under 42 U.S.C. § 1983 against the City of Penitas and Defendants Elizabeth Garza, Abelardo Gutierrez, and Roel Bermea, in their personal and official capacities, are hereby **DISMISSED**. It is further

**ORDERED** that Plaintiffs' claims under 42 U.S.C.§ 1983 against Defendants Geovani Hernandez, Julia Cruz, Nancy Venecia, Feleciano Ramos, and Mike Alaniz, in their personal capacities only, are hereby **DISMISSED**. It is further

**ORDERED** that Plaintiffs' claims against all Defendants under 42 U.S.C. § 1985 and 42 U.S.C. § 1986 and for declaratory judgment under 28 U.S.C. § 2201(a) are hereby **DISMISSED**.

It is further

ORDERED that the Clerk of Court shall enter Default against Defendant Felipe Santiago

Peralez, III.

All other relief requested in Defendants' Motions to Dismiss that is not expressly granted

herein is hereby DENIED.

SO ORDERED this 3rd day of August, 2017, at McAllen, Texas.

Randy Crane
United States District Judge